**Nazario GUERRERO, on behalf of himself and all others similarly situated, Plaintiffs,**

v.

**Ramiro GARZA, Jr., et al., Defendants.**

**No. 75–C–399.**

United States District Court,
W. D. Wisconsin.

Aug. 9, 1976.

184

John F. Ebbott and Thomas C. Hochstatter, of Milwaukee Legal Services, Inc., Milwaukee, Wis., for plaintiffs.

Herman Grant, Regional Solicitor, U. S. Dept. of Labor, by William C. Posternack, Chicago, Ill., for federal defendants.

Lee R. Atterbury, Columbus, Wis., for the Garzas (defendants).

### OPINION AND ORDER

JAMES E. DOYLE, District Judge.

This is a civil action for declaratory, injunctive, and monetary relief. Plaintiff, a migrant farmworker, alleges that defendants have violated the Farm Labor Contractor Registration Act.

The complaint alleges: Plaintiff is a migrant farmworker. He represents a class of migrant and seasonal farmworkers who have migrated or will migrate to Wisconsin as a result of their recruitment by farm labor contractors. The defendants Garza are farm labor contractors who, for a fee, recruit, solicit, and furnish migrant workers for agricultural employment. In January or February of 1975, defendant Ramiro Garza, Jr., spoke to plaintiff by phone in Del Rio, Texas and told him that he and four family members could work at the Larsen Company plant in Cambria, Wiscon-

sin. Defendant Ramiro Garza, Jr. told plaintiff that the work would begin "when the peas come in." Defendant Ramiro Garza, Jr. failed to give a specific starting date; did not disclose the duration of the proffered employment; did not disclose information as to transportation arrangements, insurance benefits, wages; did not disclose whether he would charge for recruiting plaintiff and his family; did not give plaintiff a written statement of the terms and conditions of employment; did not tell plaintiff that housing would not be provided him; and did not tell plaintiff whether or not he was a registered farm labor contractor. Defendant Ramiro Garza, Jr. was recruiting without a certificate of registration. On the same day plaintiff went to Audaz Garza's house and discussed with her his conversation with Ramiro Garza, Jr. She did not contradict any statements made by Ramiro Garza, Jr., and did not state that Ramiro Garza was not a registered farm labor contractor. She told plaintiff there was a chance he could start work early at the Larsen Company plant in Cambria, Wisconsin. On June 24, 1975 plaintiff arrived at the Larsen Company migrant camp in Cambria, Wisconsin with five family members. Until July 4 or 5, plaintiff and his family waited to be given housing and a job. During the first five days they were told by Zulema Garza that she had jobs available but no housing. On July 4 or 5, 1975 defendant Ramiro Garza, Jr. told plaintiff and his family that he could not give them a job. On July 14, 1975 plaintiff filed a complaint against Ramiro Garza, Jr. with the Wage and Hour Division of the United States Department of Labor. As of the date on which this action was filed, August 28, 1975, no action had been taken on that complaint. Under the Farm Labor Contractor Registration Act, 7 U.S.C. § 2041 et seq., the federal defendants have a duty to plaintiff and the class he represents to monitor and investigate the activities of farm labor contractors. The federal defendants have failed to monitor the activities of the Garzas and, despite complaints of plaintiff and others, have failed to promptly investigate and take action against them; and this failure to monitor, investigate, and take action is part of a pattern and practice of the federal defendants to enforce the Farm Labor Contractor Registration Act and perform their duties under it.

The federal defendants have moved to dismiss this action as to them on the grounds of lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. They have accompanied their motion with the affidavit of Jerome Estoch, Area Director of the Wage and Hour Division, Department of Labor. Plaintiff has submitted an affidavit, as have plaintiff's counsel and Mary Gundrum, employee of the Migrant Component of Milwaukee Legal Services, Inc.[1] It is to this motion that the present opinion and order are directed.

### The Farm Labor Contractor Registration Act 7 U.S.C. § 2041 et seq.

The purpose of this Act is to protect migrant workers from unscrupulous contractors who take advantage of their superior bargaining position by exploiting the workers in various ways. 7 U.S.C. § 2041 and Senate Report No. 93–1295.[2] To this end, the Act requires that all such contractors be licensed, one of the conditions of certification being proof that the transportation and housing provided by the contractor meet applicable state and federal health and safety standards. 7 U.S.C. § 2044. Among other requirements of the Act are that contractors make certain information known to the workers at the time of recruitment and in writing, and that they record and make available to the workers certain financial information during their employment. 7 U.S.C. § 2045.

The Secretary of Labor is charged with enforcing the Act. 7 U.S.C. § 2046 provides

---

1. I will consider the affidavits for the purposes of deciding whether this action has been rendered moot and for no other purpose.

2. 1974 U.S.Code Cong. and Admin.News p. 6441.

that the Secretary "may investigate and gather data with respect to matters which may aid in carrying out the provisions of this [Act]", that where a complaint is filed charging a violation of the Act, the Secretary "may investigate and gather data respecting such case;" and that he "shall monitor and investigate activities of farm labor contractors in such manner as is necessary to enforce the provisions of this [Act]."

The sanctions provided in the Act for use by the Secretary consist of the following: After notice and a hearing, the Secretary may refuse to issue or may revoke or suspend a certificate of registration if he finds that the contractor has violated the Act. 7 U.S.C. § 2044(b). Upon a willful and knowing violation of the Act there shall be imposed a criminal penalty consisting of a fine or imprisonment or both; the Secretary may also impose a civil monetary penalty for a violation of the Act. 7 U.S.C. § 2048(a) and (b). Finally, where the Secretary determines that the Act has been violated he may petition a federal district court for injunctive relief. 7 U.S.C. § 2050a(c).

The Act also permits persons aggrieved by a violation of the Act to bring a private action for damages in federal court. 7 U.S.C. § 2050a(a).

### Subject Matter Jurisdiction

I begin with the inquiry whether the jurisdictional requirements of the Administrative Procedure Act (5 U.S.C. §§ 701–706) are satisfied.[3] Section 701(a) permits judicial review unless it is precluded by statute or unless agency action is committed to agency discretion by law.

It is defendants' position that the Act gives the Secretary of Labor total discretion in enforcement and that therefore judicial review is precluded. Defendants rely on the use of the word "may" in connection with the Secretary's authority to investigate and in connection with the various

sanctions. Also, defendants argue that although the Act states that the Secretary "shall monitor and investigate," it also states that he shall do so only "as necessary for the enforcement of the act," and this last phrase, it is said, gives the Secretary total and unreviewable discretion.

■ The permissive terms in the Act to which defendants refer do not constitute an express prohibition of review. *Barlow v. Collins,* 397 U.S. 159, 165–6, 90 S.Ct. 832, 25 L.Ed.2d 192 (1969). Therefore, there is a presumption of reviewability and the defendants bear the heavy burden of overcoming this presumption with clear and convincing evidence that Congress intended to preclude judicial review. *Barlow v. Collins; Dunlop v. Bachowski,* 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975). Defendants have offered no evidence of such Congressional intent, and my review of the statute's purpose and history reveals none; rather it reveals that Congress intended to protect a class of persons of which plaintiff claims to be a member, and this intent in itself gives rise to the inference of reviewability. *Barlow v. Collins,* 397 U.S. p. 167, 90 S.Ct. 832.

■ The statutory exception for matters committed to agency discretion is a narrow one and is "applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). It is not applicable where, as here, the statute contains specific criteria by which noncompliance with the Act can be determined and where "the statute indicates with precision the measures available to enforce the Act." *Adams v. Richardson,* 156 U.S.App.D.C. 267, 480 F.2d 1159 (1973). It is peculiarly within the power of the judiciary to interpret a statute which gives an agency the power to act, in order to permit the judiciary to determine whether the agency has correctly

---

**3.** In the Seventh Circuit the A.P.A. has been held to be an independent grant of jurisdiction. *Sanders v. Weinberger,* 522 F.2d 1167 (1975).

construed its obligations under the statute. *Barlow v. Collins; Adams v. Richardson; Michigan Head Start Directors Association v. Butz,* 397 F.Supp. 1124 (W.D.Mich.S.D. 1975); see also *Alexander v. Brennan,* 74–761 (D.C.Dist. Jan. 30, 1976).

### Standing

I now consider whether plaintiff has standing to bring this action against the federal defendants.[4]

■ Under the A.P.A.[5] a person has standing to challenge agency action if the interest asserted is arguably within the zone of interests to be protected by the statute in question and if the challenged action has caused plaintiff injury in fact. *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

■ As I read the complaint, plaintiff is challenging these types of inaction[6] by the agency: (1) the failure to monitor and investigate on its own initiative the activities of the Garzas and other contractors; (2) the failure to apply sanctions to the Garzas and other contractors; and (3) the failure to act with sufficient speed in processing plaintiff's complaint against the Garzas. Plaintiff must satisfy the requirements of standing as to each claim in order to avoid dismissal of that claim.

■ Taking the allegations of the complaint as true and interpreting them liberally in favor of the plaintiff, they state that plaintiff was recruited to come to Wisconsin to perform seasonal work at the Larsen Company in relation to the picking of peas or in relation to preparing them for market. So construed, I consider the complaint sufficient to meet the requirement that plaintiff belong to the class of persons the Act was intended to protect—that is, that he be a person recruited on a seasonal or temporary basis to perform work in agricultural employment as defined by 7 U.S.C. § 2042.[7] This conclusion is not altered by the assertion in defendants' brief that the Larsen Company plant is a commercial cannery and the word "canning" is not included in Section 3(d). Even if I accept this assertion as fact, under the allegations of the complaint, plaintiff could prove that he was recruited to work in the fields; and even if he was recruited to work inside the plant, it is a reasonable inference that "handling," or "packing," "packaging," "processing," "freezing" and "grading" of agricultural commodities are activities which are carried on in a cannery.

■ It is true, as defendants argue, that the Act was not intended to provide migrant workers with housing and jobs. However, it was intended to protect them from exploitative conditions, including inadequate housing, or none, and loss of money which result from insufficient or misleading information given them by contractors recruiting them.

■ As to injury in fact, the complaint alleges that plaintiff traveled with his family to Wisconsin and waited there for some time, expecting a job and housing and being afforded neither. I consider that this injury can be construed to result from

---

4. For the purposes of deciding the standing issue, I confine myself to the question whether there was a live controversy between plaintiff and the federal defendants at the time the complaint was filed; in a later discussion on mootness I will consider the effect of subsequent events on any controversy which may have existed when the complaint was filed.

5. 5 U.S.C. § 702 provides:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

6. "Agency action" as used in 5 U.S.C. § 702 is defined in 5 U.S.C. § 551 to include the failure to act.

7. 7 U.S.C. § 2042(d) The term "agricultural employment" means employment in any service or activity included within the provisions of section 3(f) of the Fair Labor Standards Act of 1938 (29 U.S.C. § 203(f)), or section 3121(g) of the Internal Revenue Code of 1954 (26 U.S.C. § 3121(g) and the handling, planting, drying, packing, packaging, processing, freezing, or grading prior to delivery for storage of any agricultural or horticultural commodity in its unmanufactured state.

the defendants' alleged failure previously to monitor and investigate the activities of the Garzas on their own initiative and to apply an appropriate sanction. However, it is clear that the alleged injury is not the result of the federal defendants' failure to act with sufficient speed on the complaint plaintiff filed as a result of the injury. The complaint contains no allegations from which I can reasonably infer that plaintiff suffered any injury, on and after July 14, 1975, because of the failure of the federal defendants to complete the investigation sooner.[8]

I conclude that plaintiff has standing to challenge the failure of the federal defendants to monitor and investigate the activities of the Garzas and to invoke a sanction against them; and that he does not have standing to challenge the federal defendants' failure to investigate his complaint more promptly.

*Mootness*

On the basis of the affidavits I find as fact that during the period between July 21, 1975 and September 9, 1975, Ms. Thompson-Meier, an employee of the United States Department of Labor, investigated the complaint filed by plaintiff on July 14, 1975; and that on September 11, 1975 the investigation file was sent to the Regional Office in Chicago.

I take judicial notice that on October 6, 1975 an action was filed in this court, *Dunlop v. Garza*, 75–C–472, in which the Secretary of Labor sought to enjoin the Garzas from violating the Farm Labor Contractors Act. On March 26, 1976 a consent decree was entered.

The federal defendants argue that the completion of the investigation of plaintiff's complaint and the filing of the civil action

seeking injunctive relief have mooted any claims for relief he may have had.

In considering this issue, I confine my attention to those two claims which I have determined plaintiff has standing to assert.[9]

Plaintiff has alleged that the failure of defendants to monitor and investigate the activities of the Garzas and their failure to apply sanctions to them for violations is part of defendants' practice with regard to contractors generally. He has also alleged that he is a migrant farm worker, that he has been a member of the Garza crew for five years, and that he will continue to suffer as a result of inadequate enforcement of the Farm Labor Contractor Registration Act. Given these allegations, it is a reasonable construction of the complaint that plaintiff will continue to be adversely affected by the actions of contractors, either the Garzas or others, who violate the Act as a result of defendants' alleged inadequate enforcement. The fact that the defendants have investigated his complaint against the Garzas does not assure plaintiff that defendants have changed their practice and in the future will initiate monitoring and investigation of the Garzas' activities, or that they will do so in regard to other contractors who might recruit plaintiff. Similarly, the fact that defendants acted to enforce the Act by taking action against the Garzas after plaintiff filed this suit does not assure them that they have changed their alleged practice of failing to take action against contractors who violate the Act.

Because plaintiff has not received the relief to which he may be entitled should he prevail on the merits, the controversy is not moot as to him.

---

8. It is clear that the federal defendants are not authorized under the Act to order the Garzas or anyone else to provide plaintiff the job and housing he was led to expect; speedier action on his complaint could not have resulted directly in his being provided with a job or housing.

9. In his brief, plaintiff asserts two additional claims arising from the subsequent events: (1)

that the failure to revoke the Garzas' license or to refuse to license them is an abuse of discretion; and (2) that defendants' course of action in this case is part of a pattern of using only the sanction of a civil suit for injunctive relief. Such assertions in a brief are without operative effect.

### Failure to State A Claim

Defendants assert that the complaint fails to state a claim for relief against them because the Act does not require them to monitor and investigate, or even to investigate in response to complaints, and because the Act does not require them to apply particular sanctions. Again, I will consider only the claims which I have determined plaintiff has standing to raise.

Under § 706 of the A.P.A.,[10] the scope of my review is limited to determining whether the federal defendants' pattern of failing to monitor and investigate the activities of the farm labor contractors and failing to take action against them for violations of the Act is a violation of their duty under the Act or an abuse of discretion granted them by the Act.

In 1974 the sentence beginning "The Secretary shall monitor and investigate . . ." was added to 7 U.S.C. § 2046.[11] Also added to that section was a grant to the Secretary of subpoena power and various other powers relating to conducting hearings and investigations. In commenting on these changes, the Senate Report states: "This Section imposes affirmative duties upon the Secretary to monitor and investigate activities of contractors to the full extent necessary to enforce the Act."[12] Also in 1974, 7 U.S.C. § 2048(a)

was amended to require that the Secretary make an annual report containing a "description of efforts to monitor and investigate the activities of farm labor contractors . . . ." and "the number of complaints of violations received by the Secretary and their disposition . . . ." I conclude that the Act imposes a duty on the federal defendants to investigate complaints filed with them and also to undertake some monitoring and investigating activities on their own. If, as the complaint alleges, they have a practice of not monitoring and investigating, then their failure to do so is unlawful. Further, if the defendants' practice consists of investigating when a complaint is filed with them, but doing no monitoring and no other investigating, this practice is also a violation of their duties under the Act.

Concerning the application of sanctions, the Act does not explicitly require that any particular sanction be used. However, the legislative history reveals that the 1974 amendments, adding the civil penalty and injunction suit, increasing the criminal penalties, and providing sufficient appropriations, were prompted by the failure of enforcement under the original Act. The new enforcement provisions were intended to "enable the Labor Department to select and apply corrective action as needed for the differing types of violations it discovers in

**10.** 5 U.S.C. § 706

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
(1) compel agency action unlawfully withheld or unreasonably delayed; and
(2) hold unlawful and set aside agency action, findings, and conclusions found to be—
(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . .
(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right . . . .

**11.** Prior to 1974, § 2046 read:

The Secretary or his designated representative may investigate and gather data with respect to matters which may aid in carrying

out the provisions of this chapter. In any case in which a complaint has been filed with the Secretary regarding a violation of this chapter or with respect to which the Secretary has reasonable grounds to believe that a farm labor contractor has violated any provisions of this chapter, the Secretary or his designated representative may investigate and gather data respecting such case, and may, in connection therewith, enter and inspect such places and such records (and make such transcriptions thereof), question such persons, and investigate such facts, conditions, practices, or matters as may be necessary or appropriate to determine whether a violation of this chapter has been committed. This portion of § 2046 remained unchanged by the 1974 amendments.

**12.** 1974 U.S.Code Cong. & Admin.News, p. 6449.

its enforcement program." [13] Also, the Senate Report states that it was intended that the Department of Labor no longer need seek voluntary compliance before applying a sanction.[14]

█ I conclude that the Act contemplates that an appropriate sanction be applied to each contractor found to have violated the Act.[15] If, as plaintiff alleges, the federal defendants have a practice of failing to take action against contractors found to violate the Act, they would not be fulfilling their duty under the Act.

█ As to defendants' argument that they cannot be held personally liable for their acts, the issue of immunity from damages does not arise where, as here, only injunctive and declaratory relief is sought against the federal defendants. Where federal officials have violated their statutory duties, injunctive and declaratory relief is appropriate. See *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). In addition, the APA specifically authorizes this court to compel agency action determined to be unlawfully withheld. 5 U.S.C. § 706(1).

### Order

It is hereby ordered that:

Insofar as the federal defendants seek dismissal of plaintiff's claim that they failed to act promptly on his complaint, their motion to dismiss is granted; and in all other respects their motion to dismiss is denied.

█

---

13. *Ibid.* p. 6444.

14. *Ibid.* p. 6444.

15. Generally the appropriate sanction in a particular case is left to the discretion of the Secretary. But a consistent failure to use certain sanctions could constitute an abuse of that discretion; also, although it would be unusual, failure to use a particular sanction in a particular case could conceivably constitute an abuse of discretion.