Jose P. JUAREZ, Maura R. Juarez, Imelda Fernandez, Gilberto Castro, Individually and on Behalf of All Others Similarly Situated, Plaintiffs,

v.

Jesus QUINTERO, John Fernandez, Guadalupe Barragan, Ramiro Rodriguez, Jose Rodriguez, and Manuel Salinas, Defendants.

No. C–80–4021 WHO.

United States District Court, N. D. California.

May 12, 1981.

Lydia Gonzalez, Timothy H. McCarthy, William W. Monning, California Rural Legal Assistance Migrant Farmworker Project, Salinas, Cal., Susan Matcham, Dominguez, Saucedo, Hernandez & Matcham, California Rural Legal Assistance, Gilroy, Cal., for plaintiffs.

Pioda, Bryan & Ames, Salinas, Cal., for defendant Quintero.

No counsel of record listed for defendant Fernandez.

Jaime M. Cervantes, Flores, Cervantes and Luna, San Jose, Cal., for defendant Guadalupe Barragan.

A. Randall Smith, Sims & Plank, San Jose, Cal., for defendant Ramiro Rodriguez.

Frank H. James, Salinas, Cal., for defendant Jose Rodriguez.

Michael E. Adams, La Casa Legal De San Jose, San Jose, Cal., for defendant Manuel Salinas.

## OPINION

ORRICK, District Judge.

Plaintiffs, four migrant farmworkers who worked for Bob Filice Farms in Gilroy, California, during the month of July, 1980, bring this suit as individuals and as representatives of a class under § 2050a of the Farm Labor Contractor Registration Act ("the Act"), 7 U.S.C. § 2041 *et seq.*,[1] against

---

1. Section 2050a(a) provides:
   "(a) Any person claiming to be aggrieved by the violation of any provision of this chapter or any regulation prescribed hereunder may file suit in any district court of the United States having jurisdiction of the parties without respect to the amount in controversy or without regard to the citizenship of

defendants, each of whom worked as a farm labor contractor, charging they violated the Act by failing to disclose the fact that plaintiffs were out on strike to farmworkers recruited to fill plaintiffs' positions. The Act requires farm labor contractors to disclose the existence of a strike or any other concerted work stoppage to the farmworkers they recruit. 7 U.S.C. § 2045.[2]

Defendant Ramiro Rodriguez has moved this Court for dismissal of the action on the ground that plaintiffs lack standing to enforce the provisions of the Act. He argues, first, that § 2050a, which provides a private right of action to "any person claiming to be aggrieved" by a violation of the Act, was not intended by Congress to grant standing to striking workers who had never dealt directly with the farm labor contractors sued and, second, that no causal connection exists between the alleged violations and the injury suffered by plaintiffs. For the reasons stated below, defendant Rodriguez' motion is denied.

## I

On July 21, 1980, plaintiffs and other migrant and seasonal farmworkers walked off the fields of their employer, Bob Filice Farms, in support of a strike by garlic workers against the garlic growers of southern Santa Clara and San Benito Coun-

ties. In response to this strike by plaintiffs, Bob Filice Farms contracted with the defendants ·to recruit and provide workers to fill plaintiffs' positions. During the term of the strike these farm labor contractors recruited, hired, and transported additional migrant and seasonal agricultural workers to the fields of Bob Filice Farms. Section 2045(b)(7) of the Act requires that the farm labor contractor disclose the existence of a strike to each worker recruited. Section 40.51(g) of the regulations promulgated pursuant to the Act requires that such disclosure be in writing.[3] Sections 2045(c) and 40.51(h) require that the terms and conditions of employment be posted in a conspicuous place.[4] The defendants failed to comply with these requirements. Plaintiffs therefore allege that the workers were recruited in violation of the Act and, as a result, plaintiffs were economically injured by these violations. Specifically, they allege that the defendants' failure to inform the recruited workers of the existence of the strike caused plaintiffs to be displaced from their jobs and to lose their ability to bargain effectively as unionized employees.

## II

The requirements for standing in federal courts which are applicable to this case were clearly set forth by the Supreme Court in *Gladstone, Realtors v. Village of*

the parties and without regard to exhaustion of any alternative administrative remedies provided herein."

2. Section 2045(b) and (c) provides in pertinent part:

"Every farm labor contractor shall—

\* \* \* \* \* \*

(b) ascertain and disclose to each worker at the time the worker is recruited the following information to the best of his knowledge and belief: \* \* \* (7) the existence of a strike or other concerted stoppage, slowdown, or interruption of operations by employees at a place of contracted employment, \* \* \*.

(c) upon arrival at a given place of employment, post in a conspicuous place a written statement of the terms and conditions of that employment."

3. 29 C.F.R. § 40.51(g) (1980) provides in pertinent part:

"(g) The farm labor contractor shall ascertain and disclose to the worker to the best of the contractor's knowledge and belief at the time the worker is recruited, the following information in writing, in a language and manner understandable to such worker on a form such as WH–416 (information on wages and working conditions)—

\* \* \* \* \* \*

(7) The existence of a strike or other concerted stoppage, slowdown, or interruption of operations by employees at a place of contracted employment; \* \* \*"

4. 29 C.F.R. § 40.51(h) provides:

"(h) Upon arrival at a given place of employment, the farm labor contractor shall post in a conspicuous place a written statement of the terms and conditions of that employment in a language in which the workers are fluent and written in a manner understandable by such workers."

*Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1978). In *Gladstone* the Court noted that the inquiry into whether a litigant is entitled to have the court decide the merits of a case involves two limitations: constitutional and prudential.

■ First, under the constitutional limitations, a federal court's jurisdiction can be invoked only where the plaintiff has made out a case or controversy between himself and the defendant within the meaning of Article III of the Constitution. *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975). In order to fit within the meaning of Article III the plaintiff must demonstrate that he has suffered a genuine injury as a result of defendant's illegal conduct which is direct and concrete, and not abstract, remote, or hypothetical. *O'Shea v. Littleton*, 414 U.S. 488, 493, 94 S.Ct. 669, 674, 38 L.Ed.2d 674 (1974). The injury must be fairly traceable to the challenged action of the defendant. *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 41, 96 S.Ct. 1917, 1925, 48 L.Ed.2d 450 (1976).

■ Second, even if a case falls within constitutional boundaries, the plaintiff must additionally show under prudential principles that the statutory provision on which the claim rests was intended by Congress to grant persons in the plaintiff's position a right to judicial relief. *Warth*, 422 U.S. at 500, 95 S.Ct. at 2205. The prudential requirements are designed to ensure that the litigants bringing suit in federal court are those best suited to present the particular claims they are suing upon. *Gladstone*, 441 U.S. at 100, 99 S.Ct. at 1608.

■ However, Congress may, through legislation, expand standing "to the full extent permitted by Article III." *Gladstone*, 441 U.S. at 100, 99 S.Ct. at 1608; *Warth*, 442 U.S. at 501, 95 S.Ct. at 2206. Such legislation grants standing to those litigants who would normally be prevented from bringing suit by the prudential limitations. The constitutional limitations, however, still remain. As long as plaintiff can show that he suffered an actual injury as a result of the defendant's conduct and that the injury is likely to be redressed by a decision rendered in his favor, he is allowed to bring suit in federal court.

A review of analogous case law and an examination of the legislative history of the Act leads this Court to the conclusion that Congress, by enacting § 2050a(a), displayed an intention to define standing as broadly as is permitted by Article III of the Constitution. Therefore, in order to meet standing requirements, plaintiffs need only show that they have suffered actual injury as a result of the illegal conduct of the defendants. The issue to be decided by this Court is not *who* possesses the legal rights protected by § 2045(b) and (c), but whether plaintiffs suffered an actual injury as a result of conduct that violated someone's rights under these sections. *Gladstone*, 441 U.S. at 103 n.9, 99 S.Ct. at 1610 n.9.

### A

The extent of standing granted by Congress through the enactment of § 2050a(a) has not heretofore been decided.[5] This Court is, therefore, compelled to look to other decisions in which similar statutory language has been analyzed in similar contexts.

---

**5.** Defendants' reliance on *Guerrero v. Garza*, 418 F.Supp. 182 (W.D.Wisc.1976), at oral argument is misplaced. In *Guerrero* the court examined the question of standing under the Administrative Procedure Act. 5 U.S.C. § 702. This section allows a person "adversely affected or aggrieved by agency action" to bring suit but limits this right to those so affected "*within the meaning of a relevant statute*" (emphasis added). This additional language requires that prudential standing requirements be met. *See, e.g., Data Processing Service v. Camp*, 397 U.S.

150, 153, 90 S.Ct. 827, 829 (1969); *Guerrero*, 418 F.Supp. at 187. (Discussing whether interest of plaintiff falls within zone of interests to be protected by statute. Zone of interest test is a nonconstitutional standing limitation. *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100 n.6, 99 S.Ct. 1601, 1608 n.6 (1978).)

In *Flores v. Ignacio*, 90 Lab.Cas. 33,962 (S.D.N.Y.1981), the Court discussed standing under § 2050a(a) but did not reach the issue presented to this Court.

In *Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972), the Supreme Court analyzed language similar to § 2050a(a) under § 810 of the Fair Housing Act of 1968. Section 810 allowed a "person aggrieved" by discriminatory housing practices to sue in district court. Two tenants, one black and one white, of an apartment complex brought suit against their landlord to end discriminatory rental policies aimed at non-whites. The district court and the Ninth Circuit construed § 810 as permitting complaints only by persons who are objects of discriminatory housing practices and held that complaining tenants were not within the class of persons entitled to sue under that section. In reversing these courts, the Supreme Court followed the Third Circuit's opinion in *Hackett v. McGuire, Inc.*, 445 F.2d 442 (3d Cir. 1971), which had held that a statutory grant of standing to "a person claiming to be aggrieved" displayed a congressional intention to define standing as broadly as permitted by Article III. In *Trafficante*, the Court, therefore, ruled that § 810's grant of standing to "any person who claims to be injured by a discriminatory housing practice" revealed a similar intention. The plaintiffs were required to show only that they were personally injured by the defendant's alleged discrimination. The Court found that the tenants were injured, and thus aggrieved, because they had lost important benefits from interracial associations.

The *Trafficante* decision has been followed by a number of courts which have examined the extent of standing granted by Congress through the use of the language "person aggrieved" under both the Fair Housing Act of 1968 and the Civil Rights Act of 1964. *See, e.g., E.E.O.C. v. Mississippi College*, 626 F.2d 477 (5th Cir. 1980); *E.E.O.C. v. Bailey Co.*, 563 F.2d 439 (6th Cir. 1977), *cert. denied*, 435 U.S. 915, 98 S.Ct. 1468, 55 L.Ed.2d 506 (1978); *Waters v. Heublein, Inc.*, 547 F.2d 466 (9th Cir. 1976), *cert. denied*, 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1100 (1977). In *Waters*, the Ninth Circuit ruled that a white employee had standing to sue under the Civil Rights Act of 1964 to redress the alleged discrimination of her employer against Black and Hispanic Americans. The court found the employee "aggrieved" because the discrimination harmed possible advantageous personal, professional or business contacts. *See also Gladstone; Harriss v. Pan American World Airways, Inc.*, 74 F.R.D. 24, 50 n.24 (N.D. Cal.1977).

These decisions demonstrate a broad judicial construction of the language used by Congress to grant standing. Such a construction is in keeping with the federal practice of construing remedial statutes liberally. *Marshall v. Whirlpool Corp.*, 593 F.2d 715, 721–22 (6th Cir. 1979). The Act is a remedial act formed for the protection of the public and, as such, should be broadly construed. *Marshall v. Coastal Growers Ass'n*, 598 F.2d 521, 525 (9th Cir. 1979). It is noteworthy that the language used by Congress in § 2050a(a) is broad and inclusive and that the section, on its face, contains no restrictions on potential plaintiffs.

B

An analysis of the legislative history behind the Act and specifically § 2050a(a) supports the proposition that Congress intended to expand standing to the fullest extent permitted by Article III.

The Act was originally enacted in 1963 to remedy the problem of contractor exploitation of migrant farmworkers. In 1974 the Act was amended because of a congressional realization that it was having little effect in curbing such problems.

> "[T]estimony before the Congress has shown that the Act of 1963 has failed to achieve its original objectives. It has become clear that the provisions of the Act cannot be effectively enforced. Noncompliance by those whose activities the Act were [sic] intended to regulate has become the rule rather than the exception.
>
> \* \* \* \* \* \*
>
> It is quite evident that the Act in its present form provides no real deterrent to violations. Since the Act's inception, only four persons have been referred to

the Department of Justice for criminal prosecution; and only one person has ever been convicted and sentenced." S.Rep. No. 1295, 93d Cong., 2d Sess. 3, *reprinted in* (1974) U.S.Code Cong. & Ad. News 6441, 6443.

Section 2050a(a) was included in the 1974 amendments in an effort to rectify these problems and to overcome the Department of Labor's inability to police and enforce the law by providing a private right of enforcement. This is evidenced by the remarks of Representative Ford of Michigan who was then the Chairman of the Subcommittee on Agricultural Labor. In speaking on the reasons for the 1963 Act's ineffectiveness, he stated:

> "Perhaps even more important is the Department of Labor's shortage of adequate manpower to properly police and enforce the present law.
>
> [The Amendment] is intended to overcome these deficiencies by extending the act's coverage, by creating stronger enforcement provisions and by creating a civil remedy for persons aggrieved by violations." 120 Cong.Rec. 13404 (1974) (remarks of Rep. Ford).[6]

*See also Flores v. Ignacio*, 90 Lab.Cas. 33,-962 (S.D.N.Y.1981); *Espinoza v. Stokely Van-Camp, Inc.*, 89 Lab.Cas. 33,923 (N.D.Ill. 1980).

It is significant that in reaching its decision in *Trafficante* the Supreme Court noted that most of the Fair Housing litigation was being handled by less than two dozen attorneys and that, therefore, the primary method of obtaining compliance with the Civil Rights Act of 1968 was by private suit in which the complaining parties act, not only in their interest, but "as private attorneys general in vindicating a policy that Congress considered to be of the highest priority." *Trafficante*, 409 U.S. at 211, 93 S.Ct. at 367. The need for such assistance is present with regard to the Act. Realiz-

ing that the 1963 Act was a "paper tiger," Congress enacted § 2050a(a) in an effort to more effectively enforce the provisions of the Act. By so doing Congress reflected an overriding concern with the enforcement of the Act and a consequent desire to provide a broad grant of standing to effectuate such enforcement. It is the duty of this Court to interpret the Act in the manner which advances rather than frustrates the major purpose of the legislative draftsmen. *United States v. American Trucking Ass'ns*, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940); *Aranda v. Pena*, 413 F.Supp. 849, 850 (S.D.Fla.1976).

### III

■ Because this Court finds that Congress intended to expand standing to the full extent permitted by Article III through the enactment of § 2050a(a), plaintiffs may sue upon a showing that they have suffered a distinct and palpable injury that is likely to be redressed if the requested relief is granted. *Gladstone*, 441 U.S. at 100, 99 S.Ct. at 1608; *Simon*, 426 U.S. at 38, 96 S.Ct. at 1924. Plaintiffs allege that they have suffered an economic injury as a result of the defendants' failure to disclose the existence of the labor dispute to the recruited farmworkers. In support of this allegation they contend that they were displaced from their jobs and that they lost their ability to bargain effectively as unionized employees. Defendants alternatively argue that the requisite causal connection does not exist between the defendants' alleged violations and the plaintiffs' alleged injury because there is no showing that the recruited workers would not have worked had they been informed of the strike.

On the facts alleged, there is no question but that plaintiffs were displaced from their jobs and that they lost their former bargaining position. However, in order to

---

**6.** Representative Ford's remarks were echoed by other members of the House of Representatives who spoke on the enactment of the new civil cause of action. *See, e.g.*, 120 Cong.Rec. 13405–07 (1974) (remarks of Reps. O'Hara, Thompson, Lehman, Pepper, and Landgrebe).

Although the Senate version of the Bill to amend the Act was passed, the Senate version was drafted to conform with the House Bill. S.Rep. No. 1295, 93d Cong., 2d Sess. 3, *reprinted in* 4 U.S.Code Cong. & Ad.News 6445.

obtain standing, plaintiffs must allege facts from which it can reasonably be inferred that, in the absence of defendants' violation of the Act, there is a "substantial probability" that the injuries would not have occurred. *Warth*, 422 U.S. at 504, 95 S.Ct. at 2207; *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264, 97 S.Ct. 555, 562, 50 L.Ed.2d 450 (1977). The economic loss suffered by plaintiffs must be fairly traceable to the defendants' failure to disclose rather than to the independent action of the recruited farmworkers. *Simon*, 426 U.S. at 41, 96 S.Ct. at 1925.

In the context of the present motion to dismiss for lack of standing, this Court must construe the complaint in favor of the plaintiffs as well as accept all material allegations of the complaint as true. *Warth*, 422 U.S. at 501, 95 S.Ct. at 2206. In so construing the complaint herein, this Court finds that an actionable causal relationship has been alleged. A complaint should not be dismissed for failure to state a claim upon which relief can be granted unless it is certain that plaintiff is entitled to no relief under any set of facts which could be proved in support of the claim. *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978). In this case, plaintiffs should be given the opportunity to demonstrate that a substantial number of the recruited workers would have declined to work if they had known of the labor dispute and, therefore, that plaintiffs' injury resulted from the challenged actions of the defendants rather than the independent actions of the recruited farmworkers.

This Court is concerned that such proof may require speculation about the actions of the recruited farmworkers. The causal connection asserted should not be dependent upon speculation about the possible actions of third parties who are not before the Court. *Simon*, 426 U.S. at 41–42, 96 S.Ct. at 1925; *Village of Arlington Heights*, 429 U.S. at 264, 97 S.Ct. at 562. There is not, however, enough information before the Court at this time for a determination to be made as to whether the plaintiffs' complaint is dependent upon mere speculation about the actions of the recruited farmworkers. Discovery and subsequent pleadings should be directed toward this issue.

The Court additionally notes that the injury alleged is particularized and definite and will be redressed by a decision in plaintiffs' favor.[7] This case does not involve speculation as to whether exercise of the Court's remedial powers would redress the economic harm sustained by plaintiffs. *See Simon*, 426 U.S. at 45 n.25, 96 S.Ct. at 1927 n.25. The pleadings in this case are more than an "ingenious exercise in the conceivable." *United States v. Students Challenging Regulatory Agency Procedures (Scrap)*, 412 U.S. 669, 688, 93 S.Ct. 2405, 2416, 37 L.Ed.2d 254 (1973). A set of facts exists which, if proved, would entitle plaintiffs to relief.

### IV

Defendant additionally makes the argument that Congress explicitly washed its hands of farm labor problems by its exclusion of farmworkers from the National Labor Relations Act. This argument is not consistent with the enactment of the Act and does not preclude this suit.[8] Al-

---

**7.** Plaintiffs pray, pursuant to 7 U.S.C. § 2050a(b), for "$500 per plaintiff for each violation per defendant of the Farm Labor Contractor Registration Act." Plaintiff's complaint at 10.

**8.** The fact that labor problems were considered by Congress in enacting the 1974 amendments to the Act is demonstrated by the statement of Representative O'Hara of Michigan, a former chairman of the Subcommittee on Agricultural Labor and one of the instigators of the amendments to the act.

"Events in recent years have shown us that unionization of farmworkers is an important part of any program to achieve better wages and living conditions. Under H.R. 13342, a crew leader must inform a worker at the time of contracted employment of any labor dispute at the workplace.

Mr. Speaker, the Crew Leader Act amendments which we are about to pass will not solve all the problems faced by farmworkers. He will remain underpaid, overworked, exposed to occupational safety and health hazards which we thought we left behind us a-

though this case stems from a labor dispute, it is brought to remedy a violation of the Act and involves the narrow issues of (1) whether defendants' conduct violated the Act, and (2) if so, whether plaintiffs were injured by the violation. Because this Court finds that Congress intended to create a broad grant of standing to effectuate enforcement of the Act, plaintiffs will be entitled to relief upon a showing that they were aggrieved by defendants' alleged violation.

For the aforementioned reasons, defendant Rodriguez' motion to dismiss is denied.

century or more ago. He will remain exploited, cheated, and ignored. And he will remain all of these things until he is able to exercise to the fullest possible extent his right to organize and bargain collectively over wages and working conditions." 120 Cong.Rec. 13405 (1974) (remarks of Rep. O'Hara).