Pedro DE LA FUENTE, et al., Plaintiffs-Appellees,

v.

STOKELY–VAN CAMP, INC., Marcelino Vasquez and Albert Solis, Defendants-Appellants.

No. 81–1897.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 17, 1983.

Decided June 29, 1983.

As Corrected July 21, 1983.

Rehearing and Rehearing En Banc Denied Sept. 19, 1983.

Ronald E. Elberger, Bose, McKinney & Evans, Indianapolis, Ind., for defendants-appellants.

Ezequiel Tovar, Ill. Migrant Leg. Asst. Found. of Chicago, Chicago, Ill., for plaintiffs-appellees.

Before CUDAHY and ESCHBACH, Circuit Judges, and ASPEN, District Judge.*

CUDAHY, Circuit Judge.

This appeal arises from a final judgment of the United States District Court for the Central District of Illinois which held that the defendants had violated certain disclosure and posting provisions of the Farm Labor Contractor Registration Act ("FLCRA"), 7 U.S.C. §§ 2041–2055. After a bench trial, the court awarded damages and injunctive relief to the plaintiff class. The Findings of Fact and Conclusions of Law of the district court are reported at 514 F.Supp. 68 (C.D.Ill.1981). We affirm in part the judgment of the district court and remand the case for fact-finding and modification of the damage award.

I.

The complicated factual background of this case is thoroughly discussed in the district court's findings of fact. We will repeat only those facts necessary to an understanding of this appeal.

The case before us originated in November of 1977 when the five named plaintiffs filed a four-count complaint as a proposed class action.[1] Several separate classes were originally certified by the district court, but only Class I and its sub-class for those damages[2] which are awardable under the plaintiff's cause of action under FLCRA are involved in this appeal.

The Farm Labor Contractors Act was enacted in 1964 as a response to the problems of exploitation of migrant agricultural workers by "certain irresponsible contractors." 7 U.S.C. § 2041. The Act sought to eliminate some of the abuses faced by migrant farmworkers by regulat-

---

* The Honorable Marvin E. Aspen, District Judge for the Northern District of Illinois, is sitting by designation.

1. In addition to the appellants, also listed as defendants were the Interstate Commerce Commission, its Chairman and its Regional Managing Director; the United States Department of Transportation, its Secretary, and its Acting Regional Representative; and the United States Department of Labor, its Secretary and the Regional Administrator of the Employment Standards Administration for the region. The complaint asserted causes of action under FLCRA, the Wagner-Peyser Act, 29 U.S.C. §§ 49(a)–(k); and the Interstate Commerce Act, 49 U.S.C. §§ 301–325. Prior to trial, the district court granted a motion for judgment on the pleadings with respect to the Interstate Commerce Commission and related defendants. Also prior to trial, a stipulation was agreed to dismissing the case as to the Transportation and Labor defendants with respect to the alleged non-enforcement of existing regulations. After trial, the district court granted summary judgment for the defendants on the issue of the failure of the Transportation defendants to adopt new regulations on the grounds that the plaintiffs had failed to exhaust their administrative remedies. *See De La Fuente v. Stokely-Van Camp, Inc.,* 514 F.Supp. 68, 81 n. 7 (C.D.Ill. 1981).

2. Class I was certified as:

All persons, who have been recruited since January, 1977 or will have been recruited through the Interstate Recruitment System by defendants, Stokely-Van Camp, Inc., Albert Solis and Marcelino Vasquez for work in Illinois.

The plaintiffs also proceeded as a sub-class seeking monetary damages as:

All persons who were recruited in Texas in 1977, 1978 and 1979 through the Interstate Recruitment System for work at Stokely-Van Camp, Inc.'s Illinois operations.

514 F.Supp. at 70.

ing the "middlemen," or "farm labor contractors" ("FLC's"), who were instrumental in recruiting and furnishing farmworkers from areas of low employment to areas where these workers' services were more valued. *See Alvarez v. Longboy,* 697 F.2d 1333, 1335–37 (9th Cir.1983); *Donovan v. Marrero,* 695 F.2d 791, 792–93 (3rd Cir. 1982); *Mountain Brook Orchards v. Marshall,* 640 F.2d 454, 457–58 (3rd Cir.1981); S.Rep. No. 1295, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 6441–6451. The Act compels "farm labor contractors," *inter alia,* to (1) obtain a certificate of registration from the Secretary of Labor; (2) make detailed disclosures to all migrant workers concerning the terms and conditions of their employment both at the time they are recruited and by posting these disclosure statements at job sites and in the labor camps; (3) obtain insurance of various types; and (4) maintain payroll records and give each worker certain income and payroll information. 7 U.S.C. § 2043–45. The Act imposes criminal and civil penalties for violation of its provisions, provides for suits for injunctive relief brought by the Secretary of Labor, and, since its 1974 amendment, specifically provides for a private right of action by "[a]ny person claiming to be aggrieved" for "damages up to and including an amount equal to the amount of actual damages, or $500 for each violation, or other equitable relief." 7 U.S.C. §§ 2048, 2050a.[3]

The plaintiff class ("the Farmworkers") is composed of United States citizens or lawfully admitted resident aliens from southern Texas. The principal language of the Farmworkers is Spanish. Approximately 80% of the Farmworkers do not speak or read English. Appellant Stokely-Van Camp, Inc. ("Stokely") is an Indiana corporation whose business in Illinois includes the harvesting, processing and packaging of agricultural products. Appellant Solis is a resident of Texas who worked for Stokely recruiting workers in Texas to work in Stokely's operations in Illinois. Appellant Vasquez is a resident of Texas who worked for Stokely as a "crew leader," or combined recruiter and foreman.

Stokely engages in the harvesting, processing and packaging of various farm products in Illinois and Indiana, and maintains canneries at Rochelle, Gibson City and Hoopeston, Illinois, as a part of this business. A large part of the work force for these operations is made up of migrant farmworkers who live in labor camps which are run by Stokely and located near the canneries. The season of employment for these farmworkers typically runs from April to September.

During 1977–1980, Stokely used the Interstate Recruitment System established under the Wagner-Peyser Act, 29 U.S.C. §§ 49–49(a)–(k).[4] This system is a cooperative program administered by the U.S. Department of Labor and state employment services that enables employers to use governmental resources to recruit workers in states with low demand for labor to work in states with high demand. In each of the years in question, Stokely submitted "clearance orders," or requests for workers, to the Illinois State Employment Service ("ISES") which described the terms and conditions of the employment it offered and detailed Stokely's requirements. Those clearance orders, after passing inspection at the ISES, were forwarded to the Department of Labor and the Texas Employment Commission ("TEC"). In addition to the clearance orders, Stokely prepared other forms required by Illinois law, including ISES form 560–C, describing the terms and conditions of the employment. The clearance orders were in

---

**3.** FLCRA was repealed on January 14, 1983. The subject matter of FLCRA is now covered by the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C.A. §§ 1801–1872 (West Supp.1983).

**4.** The Farmworkers also alleged that Stokely violated the conditions on recruitment imposed by the Wagner-Peyser Act. The district court held that no private right of action exists under the Wagner-Peyser Act, 514 F.Supp. at 77, and this issue is not raised in this appeal. *See contra Lerma v. Stokely-Van Camp, Inc.,* 504 F.Supp. 1313, 1315 (N.D.Ill.1981). We, of course, express no opinion on this issue.

English only, while form 560–C was in both Spanish and English.

In addition to the Interstate Recruitment System, and as a supplement to it, Stokely employees participated in the recruitment effort. Appellant Solis was employed by Stokely, as a year-round employee in 1977 and 1978 and as a seasonal employee in 1979 and 1980, as its Texas-based agent for recruiting workers to work in Stokely's Illinois operations. Appellant Vasquez served as Stokely's agent during the spring recruitment effort in Texas during all the years in question. Stokely also sent employee representatives to Texas each year to meet and discuss recruiting needs with Solis and Vasquez and other crew leaders prior to recruitment. Solis was particularly crucial in the recruitment process. Solis contacted farmworkers, explained Stokely's needs and conditions of employment and acted as a general supervisory liaison between Stokely, the TEC and the Farmworkers. Solis was also responsible for seeing that the Farmworkers both executed all necessary forms and contracts and received copies of form 560–C, the clearance orders and other documents. Solis had authority to sign contractual documents as a representative of Stokely.

The case before us is essentially a dispute between the Farmworkers and Stokely over Stokely's, and its representatives', failure to comply with certain of the disclosure obligations imposed on farm labor contractors by federal law. After extensive discovery and an eight-day bench trial, the district court concluded that Stokely was a "farm labor contractor" within the meaning of section 2042 of FLCRA, 7 U.S.C. § 2042, and was thus obligated to comply with the disclosure provisions of FLCRA. The district court further found that Stokely and its representatives failed to comply with several of the disclosure obligations enumerated in FLCRA. The court granted both equitable relief mandating future compliance with FLCRA and compensatory monetary damages to the plaintiff class.

On appeal, the appellants raise several issues. Appellants contend that the district court erred in certifying this case as a class action, in finding Stokely to be a "farm labor contractor" within the meaning of FLCRA, in construing FLCRA to apply to the activities of Stokely at issue in this case, and in finding that the appellants had violated any of the disclosure provisions of FLCRA. The appellants also assert that the damages awarded by the district court were excessive and punitive.

II.

A. Class Action Issues

■ Appellants claim that it was error for the district court to certify this case as a class action both because appellants believe that class relief is not available under FLCRA and because they think that the requirements of Rule 23 of the Federal Rules of Civil Procedure were not satisfied. Appellants' initial contention is easily dispensed with. The appellants did not argue their theory that class actions were not authorized under FLCRA to the district court, and thus are arguing this theory for the first time on appeal. We see no reason to depart from the general rule that we will not address arguments which were not previously raised in the district court. *Brookhart v. Illinois State Board of Education*, 697 F.2d 179, 184 n. 8 (7th Cir.1983); *Phillips v. Hunter Trails Community Ass'n*, 685 F.2d 184, 191 (7th Cir.1982); *Sharp v. Ford Motor Credit Co.*, 615 F.2d 423, 424 n. 1 (7th Cir.1980).

Even if we did reach the issue of whether class actions are permissible under FLCRA, we would find no merit in appellants' theory. Courts have consistently certified class actions in FLCRA cases, and there is no indication in any of these cases that Congress meant to prohibit class actions under FLCRA. *See Alvarez v. Joan of Arc, Inc.*, 658 F.2d 1217 (7th Cir.1981); *Aguirre v. Bustos*, 89 F.R.D. 645 (D.N.M.1981); *Juarez v. Quintero*, 530 F.Supp. 267 (N.D.Cal.1981). The only authority appellants cite in support of their theory is a brief statement in the Congressional Record noting the exclusion of class actions in FLCRA litigation. The statement was made during the legisla-

tive debate over an early version of FLCRA by a minority member of the House subcommittee which considered the legislation. 120 Cong.Rec. 13407 (1974) (Congressman Landgrebe). This relatively insubstantial indicator of legislative intent is not a sufficient basis on which to reverse the otherwise universal acceptance of a class action remedy under FLCRA.

Appellants also assert that certification of the class was incorrect because the district court erred in determining that the requirements of a class action had been met. In particular, appellants argue that the condition of Rule 23 that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class" has not been met. Fed.R.Civ.P. 23(a)(3). Appellants note that of the five named plaintiffs, none had worked for Stokely in 1978 and 1979 and that there was some question whether certain of the named plaintiffs worked in any of the interim employment situations arranged through the appellants. Appellants reason that there is consequently a fatal lack of typicality of the named plaintiffs with respect to the class which they seek to represent because of the named plaintiffs' relatively brief tenures with Stokely.

█ Rule 23(a) of the Federal Rules of Civil Procedure specifies four prerequisites which must be satisfied before a class may be certified. Subsection 3 of Rule 23(a), added in the 1966 revision of Rule 23, addresses the issue of how the individual claims of the class representatives interrelate with the claims of the class as a whole. Commentators apparently consider subsection a(3) (on typicality) to overlap subsection a(2)'s concern with commonality of issues and subsection a(4)'s concern with adequate representation, *see* 3B J. Moore & J. Kennedy, *Moore's Federal Practice* ¶ 23.-06–2 (1982); 7 C. Wright & A. Miller, *Federal Practice & Procedure* § 1764 (1972); *see also General Telephone Co. v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 2371 n. 13, 72 L.Ed.2d 740 (1982). We think, however, that subsection a(3) primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large. "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." H. Newberg, *Class Actions* § 1115(b) at 185 (1977); *Resnick v. American Dental Ass'n,* 90 F.R.D. 530, 539 (N.D. Ill.1981); *Edmondson v. Simon,* 86 F.R.D. 375, 380–81 (N.D.Ill.1980). The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact. *Donaldson v. Pillsbury Co.,* 554 F.2d 825 (8th Cir.), *cert. denied,* 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977); *Resnick,* 90 F.R.D. at 539; *Edmondson,* 86 F.R.D. at 381; *Garcia v. Rush-Presbyterian-St. Lukes' Medical Center,* 80 F.R.D. 254, 270 (N.D.Ill.1978). We further note that the district court's decision as to the class representatives' satisfaction of the Rule 23 prerequisites can only be set aside for an abuse of discretion. *Patterson v. General Motors Corp.,* 631 F.2d 476, 480 (7th Cir.1980), *cert. denied,* 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981).

█ We think that the named plaintiffs' claims in this case are sufficiently "typical" of the claims of the class as a whole that the district court did not abuse its discretion in certifying the class. The major claims of the plaintiffs in the certified class are directed at the recruiting and disclosure practices of the appellants. These practices affected in the same way anyone who came to work for the appellants through the recruitment channels which are the subject of this case. The practices complained of remained essentially unchanged throughout the years in question. All members of the class were subject to the same allegedly unlawful practices. We have not previously interpreted Rule 23(a)(3) to require that each member of a class suffer precisely the same injury as the named class representatives, *see Tidwell v. Schweiker,* 677 F.2d

560, 566 (7th Cir.1982), and we decline to construe the Rule as containing such a requirement. Appellants have not previously claimed that the practices which the named plaintiffs complained of did not equally affect the other members of the class, and, indeed, they could not legitimately make such a claim. We thus find that the district court correctly determined that the named plaintiffs' claims were typical of the claims of the class as a whole and properly certified this lawsuit as a class action.

Appellants further contend that the Class I sub-class was unmanageable and should not have been certified because of the very broad definition of that class and because of the difficulty of correctly awarding damages to it. Manageability is a requirement of a Rule 23(b)(3) class action pursuant to paragraph D of Rule 23(b)(3). Appellants argue that the problems of correctly allocating damages—when the work performed, crops picked, years worked, amount of previous dockage, degree of English literacy, and various other factors all vary—render any determination that this class was manageable clear error.

■ We find this argument to be without merit. It is very common for Rule 23(b)(3) class actions to involve differing damage awards for different class members. *See* 7A C. Wright & A. Miller, *Federal Practice & Procedure* § 1784 (1972); 3B J. Moore & J. Kennedy, *Moore's Federal Practice* ¶ 23.-45[4.–4] (1982). The district court apparently had confidence in its ability to deal with the allocation of damages, and, as evidenced by its Revised Final Judgment, has already begun to consider and resolve these problems. There are undoubtedly administrative complications in managing a distribution of damages to a class of this sort, but these problems are not nearly substantial enough to suggest that the district court abused its discretion in finding that this class was, indeed, manageable.

B. Application of FLCRA to These Appellants

■ The obligations and constraints of FLCRA apply only to a limited class: "farm labor contractor[s]" who, "for a fee, either for [themselves] or on behalf of another person, recruit, solicit, hire, furnish, or transport migrant workers (excluding members of [their] immediate family) for agricultural employment." 7 U.S.C. § 2042(b). In addition to these restrictions, FLCRA contains several other exemptions, excluding certain additional situations from its scope. The most relevant of these exemptions for the purposes of this case is section 2042(b)(2) which exempts anyone who engages in these activities "for the purpose of supplying migrant workers solely for his own operation." 7 U.S.C. § 2042(b)(2). Appellants raise a variety of arguments why the obligations of FLCRA do not apply to them. They argue that FLCRA does not apply to them at all because they received no "fees" for their services under section 2042(c), and they believe that their activities are covered by the exemption of section 2042(b)(2), noted above. They also assert that certain of the workers whom they recruited (essentially the canning workers) were not "migrant workers" as defined by section 2042(g) and that these same workers were not engaged in "agricultural employment" as defined in section 2042(d).

■ Before we turn to the substance of appellants' arguments, appellees cite several procedural reasons which they think preclude the appellants, in one way or another, from raising these issues at all. Appellees argue first that Stokely is collaterally estopped on the basis of *Espinoza v. Stokely-Van Camp, Inc.,* 641 F.2d 535 (7th Cir.), *cert. dismissed,* 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981), from arguing that it is not a "farm labor contractor." *Espinoza* involved claims under FLCRA and the Wagner-Peyser Act brought against Stokely by six farmworkers who were employed by Stokely during the 1978 asparagus harvest in Rochelle, Illinois. Approximately $3300 in total damages were at stake in the *Espinoza* case. Appellees contend that Stokely's concession for the purposes of appeal in *Espinoza* that it was a FLC is determinative of Stokely's status in this case.

Appellees' argument fails for several reasons. First, registration as an FLC remains in effect for only one year, 7 U.S.C. § 2044(c), and is limited to a particular plant or location. Thus, at best, appellees' argument applies only to Stokely's activities at Rochelle in 1978. Second, the Supreme Court has sanctioned the use of offensive collateral estoppel only where its application is not "unfair" to a defendant. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979). We think that it would be quite "unfair" to apply offensive collateral estoppel in the case before us. The *Espinoza* case involved a relatively insubstantial amount of damages and the claims of only a few plaintiffs. Stokely's incentive to contest the issue of FLC status in *Espinoza* was weak, and we decline to give Stokely's tactical decisions in *Espinoza* the far-reaching effect appellees seek. Finally, there is some question whether the appellees ever asserted the doctrine of collateral estoppel in the district court. As noted earlier, we generally decline to consider issues not properly raised initially in the district court. *See* p. 6 *supra*.[5]

 The district court found that Stokely was an FLC, and thus subject to FLCRA, because, "for a fee," it recruited or furnished "migrant workers for agricultural employment by Illinois seed companies in the interim periods between Stokely's harvesting and canning periods." 514 F.Supp. at 78. The district court considered Stokely's activities in securing interim employment to be key; without these activities, Stokely would "conceivably" not be considered an FLC because its recruitment would have been solely for its own opera-

tions. *Id.* Stokely contends that it neither received "fees," nor did it recruit workers, for other than its own use. We note as an initial matter that FLCRA is a remedial statute and should be construed broadly. *Donovan v. Heringer Ranches, Inc.*, 650 F.2d 1152, 1154 (9th Cir.1981); *Marshall v. Green Goddess Avocado Corp.*, 615 F.2d 851, 857 (9th Cir.1980). "A party claiming exemption from such legislation must demonstrate that its activities are 'plainly and unmistakably within [the] terms and spirit' of the exemption." *Heringer Ranches*, 650 F.2d at 1154 (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960)).

 Stokely's fee argument is essentially that the only sort of fees which can be relevant to Stokely's status as an FLC must be fees paid "for services as a farm labor contractor."[6] Since the fees Stokely received from interim employers were paid to cover partially Stokely's housing expenses, Stokely argues, and since the provision of housing is not an activity which, by itself, converts someone into an FLC, *see* 7 U.S.C. § 2042(b), these housing payments received by Stokely did not constitute a "fee" under section 2042(c). Stokely's reasoning is overly literal. The housing compensation or fees which Stokely received were in return for providing a ready work force to other local employers. The employers who hired the Farmworkers did not care how Stokely used the money which they paid; the interim employers' only concern was in obtaining workers, and they were happy to compensate Stokely for providing that service. There is no requirement in FLCRA to trace the purpose, or use to which applied, of a fee received by an FLC. This Court has

---

5. Appellees also argue that Stokely is precluded from arguing that it is not an FLC based on its contention that the cannery workers were not "migrant workers" recruited for "agricultural employment." Appellees note first that Stokely stipulated that it recruited "migrant workers." Appellees' App. at A–4. This stipulation cannot control, however, the issue of whether these workers were, indeed, "migrant workers" as that term is used in FLCRA. Appellees also assert that Stokely did not raise its contention that cannery workers are not covered by FLCRA at trial. Appellants contest this assertion. We need not resolve this dispute, however, given our determination on the merits of this issue.

6. The term "fee" is defined in section 2042(c):

(c) The term "fee" includes any money or other valuable consideration paid or promised to be paid to a person for services as a farm labor contractor.

7 U.S.C. § 2042(c).

already determined that fees received in compensation for housing costs are "fees" for purposes of FLCRA. *Alvarez v. Joan of Arc, Inc.,* 658 F.2d 1217, 1220–21 (7th Cir. 1981). *See also Usery v. Coastal Growers Ass'n,* 418 F.Supp. 99, 101 (C.D.Cal.1976), *aff'd sub nom. Marshall v. Coastal Growers Ass'n,* 598 F.2d 521 (9th Cir.1979). We see no reason to reassess that determination. The payments which Stokely received from other employers were fees within the meaning of FLCRA.

■ At oral argument, appellants also argued that Stokely could not be considered to be an FLC with respect to certain members of the plaintiff class because Stokely actually received no fees for providing workers from the Gibson City and Rochelle camps in certain years. While this argument may have some merit in a proper case, we think that appellants have not demonstrated that their failure to receive fees changes their status as FLC's in the case before us. As a general matter, the focus of FLCRA is on the *recruitment* process. At the time the *group* of workers involved here was *recruited,* the professed intention of Stokely was to attempt to obtain compensation from the other employers who temporarily hired the farmworkers whom Stokely recruited. In the typical situation, it would be the existence of the intention at the time of recruitment which would be the key factor in determining the applicability of section 2042.

■ We are mindful, however, of the potential inequity which might arise if we were to look only at events and intentions at the time of recruitment and ignored subsequent events. If a party could demonstrate that it specifically changed its payment policy and decided to forgo receiving fees from other employers for all or substantially all of the workers it recruited in order to avoid FLC status, it would seem to us that, under those circumstances, such a

party could not be deemed to be an FLC, even though its professed intentions at the time of recruitment would have, without more, made it an FLC. But this exception does not seem to us appropriate where the failure to receive fees was merely incidental or fortuitous and involved only some of the workers recruited. Where fees are waived for only a fraction of the workers in a given recruiting effort, there is a presumption that FLC status continues.

■ A court must look at all of the workers recruited in a particular recruiting effort: in this case, that encompasses all of the workers the appellants recruited in a particular year to work in its Illinois camps. To avoid FLC status, appellants would have to show that the failure to receive fees was due neither to inadvertance nor to lack of success in persuading other employers to provide interim work. Rather, failure to receive fees would have to be attributable to a deliberate shift in corporate policy. We think it unlikely that appellants can make such a showing here, but upon remand they may attempt to make such a showing.[7]

Appellants clearly recruited workers for other than their own exclusive use. Appellants correctly argue that the purpose of FLCRA was only to regulate the "middlemen" who broker laborers to farmers, growers and canners. However, appellants' further argument that the record shows that Stokely did not "arrange, develop, or secure employment for the workers" and was thus not the type of "middleman" which FLCRA was intended to regulate is wide of the mark. In fact, the district court explicitly found that the appellants actively engaged in attempting to develop interim jobs for the Farmworkers. 514 F.Supp. at 72. We have no reason to believe that this finding was erroneous. Stokely stated in its clearance orders that it would "make efforts to develop jobs for its

---

**7.** It is unclear from the record on appeal whether this argument as to avoidance of FLC status was raised in the district court. Upon remand, if it should be determined that this theory was not raised by appellants during the district court's initial determination of the case, this theory may not be raised on remand, and the district court's initial determination as to FLC status will stand affirmed.

migrant workers with local employers in the idle periods between field work and cannery work." 514 F.Supp. at 72.

■ It was surely in Stokely's interest to attempt to provide interim employment for the Farmworkers it recruited. The record shows that interim employment, for the periods when Stokely itself did not require workers, was an essential part of Stokely's effort to ensure a full complement of workers for the fall as well as for the spring harvest and canning seasons. It was also clearly in Stokely's interest, in terms of its role as a labor recruiter competing against other recruiters, to attempt to offer as full a season of labor as possible. FLCRA requires only that an individual or corporation receive a fee for recruiting, soliciting or furnishing migrant workers. Appellants performed all those functions here. Appellants received fees and acted as farm labor contractors when they provided Farmworkers to other employers in return for compensation for housing costs. We therefore approve the district court's finding that appellants were farm labor contractors subject to the obligations of FLCRA.[8]

Stokely further contends that the Farmworkers recruited under eight of the sixteen clearance orders for cannery work were not "migrant workers" engaged in "agricultural employment" as those terms are defined in FLCRA.[9] Stokely relies on its interpretation of subsection (d), which it believes to protect only work involving agricultural products prior to their delivery in an unmanufactured state. That is, any work performed after processing of an agricultural commodity is, in Stokely's view, not covered by FLCRA.

■ But Stokely's interpretation of the statutory language is overly restrictive. Read naturally, the subsection states that agricultural employment encompasses any activity which is performed before the unprocessed agricultural commodity is stored in some way. In other words, once an unprocessed (or "unmanufactured") agricultural commodity is put in storage pending delivery to market, any processing function which is later performed is not covered by FLCRA. Conversely, any "drying, packing, packaging, processing, freezing or grading" which is performed *before produce is stored* is covered by the Act. *See Guerrero v. Garza,* 418 F.Supp. 182, 187 (W.D.Wis.1976). There was no contention in this case that the canning work in question was performed in connection with agricultural commodities which had previously been stored in an unmanufactured state. In fact, the record indicates that the canneries packed vegetables during the same period that these vegetables were being harvested in the area, with no intervening storage. The record thus supports the view that the cannery workers in this case were, like their counterparts in the fields, engaged in "agricultural employment" covered by the Act.

## C. Statutory Violations

The district court, having determined that the appellants were all subject to FLCRA, found that all of the defendants had violated section 2045 of FLCRA[10] by

---

**8.** Appellants' status as FLC's applies to them with respect to the entire plaintiff class. It could be argued that this status should not apply with respect to those Farmworkers who did not actually obtain any kind of interim employment and worked only for appellants. Thus, with respect to this subclass, it could be argued that section 2042(b)(2)'s exemption for "own use" applies. We think that this would be an incorrect interpretation of the section 2042(b)(2) exemption. *See* p. 13 *supra. But see, Canter v. Owatonna Canning Co.,* 90 Labor Cases ¶ 33,966 at p. 49,456 (D.Minn.1978) (implying a contrary result on consideration of a motion for summary judgment).

**9.** Section 2042(d) defines "agricultural employment":

(d) The term "agricultural employment" means employment in any service or activity included within the provisions of section 203(f) of Title 29, or section 3121(g) of Title 26 and the handling, planting, drying, packing, packaging, processing, freezing, or grading prior to delivery for storage of any agricultural or horticultural commodity in its unmanufactured state.

7 U.S.C. § 2042(d).

**10.** Section 2045 provides, *inter alia:*

Every farm labor contractor shall—

\* \* \* \* \* \*

(1) unlawfully failing to give the Farmworkers clearance orders in written Spanish at the time of recruitment; (2) failing to disclose fully the wage rates that would be paid to the workers in two respects: neglecting to inform them of Stokely-Van Camp's asparagus dockage policy and failing to tell them how much Marcelino Vasquez was paid during in-plant operations in the canning season. Stokely was also found to have failed to inform the workers of the payments it received from interim employers. Appellants assert that these findings of the district court are clearly erroneous.[11]

### 1.) Dockage

Stokely listed a requirement on all of its farm-hand clearance orders that asparagus pickers had to "hand snap asparagus in the field to a specific height." *See, e.g.*, Defendants' Ex. 6. Stokely enforces this requirement through a "dockage" policy which reduces the Farmworkers' pay by a percentage varying in accordance with the amount of nonconforming asparagus picked (by Stokely's specifications).[12] The appellants contend that the statement of the "dockage" requirement, as quoted above, was adequate compliance with FLCRA's obligation to disclose fully the wage rates which the workers would receive. Appel-

lants also believe that the Farmworkers had actual notice of the "dockage" policy because a high percentage of the Farmworkers had worked for Stokely in previous years.

 We find that the district court's conclusion that Stokely's statement was not adequate notice of wage rates was not clearly erroneous. The statement to "snap asparagus . . . to specified height" does not adequately describe the operation of Stokely's dockage policy and its potential effect upon the workers' wages. Appellants' alternative claim of actual notice from prior experience was considered and rejected by the district court. Not only does the record contain adequate evidence to support a finding that many of the Farmworkers did not know of the policy, but even if some had been aware of the policy, appellants' obligation to disclose wage rates *in writing* would not have been satisfied.

### 2.) Posting

 The district court held that appellants failed to post a written statement of the terms and conditions of employment in a conspicuous place when the workers arrived at the place of their employment, thereby violating section 2045(c). The ap-

---

(b) ascertain and disclose to each worker at the time the worker is recruited the following information to the best of his knowledge and belief: (1) the area of employment, (2) the crops and operations on which he may be employed, (3) the transportation, housing, and insurance to be provided him, (4) the wage rates to be paid him, (5) the charges to be made by the contractor for his services, (6) the period of employment, . . . . The disclosure required under this subsection shall be in writing in a language in which the worker is fluent, and written in a manner understandable by such workers on such forms and under such terms and conditions as the Secretary shall prescribe.

(c) upon arrival at a given place of employment, post in a conspicuous place a written statement of the terms and conditions of that employment;

(d) in the event he manages, supervises, or otherwise controls the housing facilities, post in a conspicuous place the terms and conditions of occupancy;

7 U.S.C. § 2045.

11. Appellants do not contest finding (1) of the district court in this appeal.

12. The dockage policy was explained to the district court as follows: Each individual worker's pick is first weighed in the field. The asparagus is then combined with all asparagus picked by the worker's entire crew, and weighed at the cannery. There is no dockage if there is less than a five percent difference between field and scale house weight. If there is more than a five percent difference, the picked weight of each member of the crew is reduced by the percentage by which the differential between field and scale house weight exceeds five percent. After weighing, a sample is taken from each lot and graded. Asparagus which is too short and any inedible materials are discarded, and the sample is reweighed. If there is less than a ten percent reduction in weight, there is no additional dockage, but a greater than ten percent difference results in reduction of the picked weight ascribed to the crew by the amount the difference exceeds ten percent. 514 F.Supp. at 72–73.

pellants cite a variety of evidence which they believe proves that the district court's finding was clearly erroneous. Appellants also cite evidence indicating that the workers were aware of the information which was required to be posted and personally explained to them. Conflicting testimony was presented on the issue of whether there was adequate posting, and the district court found the appellees' evidence to be more persuasive. The district court was, therefore, not clearly erroneous in finding that the appellants did not satisfy the posting obligation.

3.) Commissions received by Marcelino Vasquez

The district court held that appellant Vasquez violated section 2045(b) by failing to disclose the $.10 per hour per worker commission which Stokely paid him during in-plant canning operations and by failing to disclose commissions he was paid by interim employers. Vasquez argues that he had no duty to disclose the commissions he received with respect to the cannery workers because those workers were not engaged in "agricultural employment" and were therefore unprotected by FLCRA. This argument is identical to the one appellants make as to why they were not FLC's with respect to the workers recruited under clearance orders for cannery workers. We find Vasquez's argument based on cannery workers not being engaged in agricultural employment to be without merit, see supra at p. 16–17.

Vasquez also argues that he had no obligation to disclose the interim employment commissions because he was not directly charging the workers for his services. This argument is also without merit. Vasquez was compensated for providing workers; it is irrelevant whether his pay was provided by employers or was furnished by his co-workers. We find that the district court correctly determined that appellant Vasquez violated section 2045(b).

4.) Fees received by Stokely

Stokely was held to have violated section 2045(b) by not disclosing to the farmworkers the housing fees it intended to charge interim employers. As a defense for its actions in 1977, appellant notes that liability for damages under FLCRA must be based on an "intentional" violation of the Act. 7 U.S.C. § 2050a (1980). Because appellant alleges that it was not on notice of any duty to comply with FLCRA (since it thought that it was exempt), appellant argues that it did not *intentionally* violate FLCRA. This court has already held that the term "intentionally" in section 2050a "means conscious or deliberate and does not require a specific intent to violate the law." *Alvarez v. Joan of Arc, Inc.,* 658 F.2d 1217, 1224 (7th Cir.1981). *See also Alvarez v. Longboy,* 697 F.2d 1333, 1338 (9th Cir.1983). Thus, appellant failed to disclose adequately its intention to obtain compensation from interim employers for housing the Farmworkers, and there are no facts in the record to indicate that this failure was not conscious or deliberate (even if Stokely were unaware it was violating the law). We therefore affirm the district court's determination that Stokely violated section 2045(b) in 1977.

With respect to 1978 and 1979, Stokely modified the statement concerning interim employment on its clearance order to read: "Companies using workers will be charged for Stokely-Van Camp housing, including all costs related thereto." *See, e.g.,* Defendants' Exh. 3. We find the district court's conclusion that this statement failed to disclose adequately Stokely's intentions to the Farmworkers to be clearly erroneous. At the time these disclosure statements were prepared, appellants could not predict the precise terms they would be able to negotiate with interim employers as compensation for housing. The statements made in 1978 and 1979 provided adequate notice to the Farmworkers of the possibility that Stokely would be compensated for housing them. In fact, the statement discloses that Stokely could charge any amount up to the full cost of housing the Farmworkers. The district court found that the actual fees charged never covered Stokely's cost for housing.

Our rejection of the court's finding as to the statements in 1978 and 1979 would,

with one exception, seem to compel disapproval of the district court's conclusion that Stokely violated section 2045(b) in 1978 and 1979. The exception is an unresolved dispute over whether the clearance order or any other document contained this required statement *in Spanish.* Section 2045(b) explicitly requires that disclosures be made "in writing in a language in which the worker is fluent." 7 U.S.C. § 2045(b). The case must therefore be remanded for a finding by the district court as to whether the statement concerning Stokely's fee intentions in 1978 and 1979 was disclosed to the Farmworkers in written, understandable Spanish.

D. Damages

█ If a court finds that FLCRA has been intentionally violated, "it may award damages up to and including an amount equal to the amount of actual damages, or $500 for each violation, or other equitable relief," 7 U.S.C. § 2050a(b). The plaintiffs did not attempt to prove actual damages or out-of-pocket losses in the district court, choosing instead to argue that the plaintiffs should receive the $500 provided by the statute for each violation shown by the evidence. The district court, following this court's opinion in *Alvarez v. Joan of Arc, Inc.,* 658 F.2d 1217, 1224 (7th Cir.1981), interpreted the statutory language to permit damages of "up to $500 for each violation," 514 F.Supp. at 80, and awarded, as liquidated damages, $90 per season to each worker whose earnings from picking asparagus were docked as a result of Stokely's dockage policy, and $100 per worker per season as compensation for defendants' other statutory infractions. Appellants believe that the damages awarded by the district court were excessive and punitive. In view of the relatively technical nature of the violations, we think that the damages were certainly ample, but we cannot find them "excessive" within the statutory scheme.

Appellants argue that the court erred in awarding the $90 damages because the dockage matter was only a "disclosure violation" which, according to appellants, did not cause the plaintiffs any loss of earnings.

This may be true, but the appellants apparently misunderstand what the district court did. The district court made an initial decision to award liquidated, rather than actual, damages as allowed by section 2050a(b). Once that determination was made, the district court had broad discretion in determining what amount of liquidated damages to award, and decided to base the amount of damages on the approximate amount the wages of the Farmworkers were docked as a result of the policy. This decision was not clearly based on a finding that the dockage policy was illegal, but rather rested on the conclusion that appellants had violated FLCRA by failing to disclose wage information (related to dockage) which might have been relevant to the Farmworkers' decision whether to work for the appellants. FLCRA was designed to prevent the exploitation of farmworkers by ensuring the disclosure of information relevant to a migrant worker's employment decision. Appellants unlawfully failed to disclose that information, and the district court was within the bounds of its discretion in deciding to base its damage award on its estimate of the reduction in wages which resulted from dockage.

Appellants also argue that the $100 damages for the remaining violations should not have been awarded. Appellants believe that the failure to disclose the receipt of housing fees was "probably the principal reason" for the $100 damage award. They believe that because the plaintiffs benefited from living in Stokely's housing, while Stokely received fees from interim employers which only partially reimbursed Stokely's cost of providing the housing, there was no "exploitation" of the Farmworkers which resulted from Stokely's "technical" violations of the Act. Appellants' characterization of the violations and their effects is not necessarily wrong. But this observation does not invalidate the decision of the district court. The district court found that the appellants had violated several different disclosure requirements of FLCRA. Because of the difficulty of quantifying the monetary impact of these violations, and because of the importance of enforcing strict compliance with FLCRA, the district

court attempted to determine an amount of liquidated damages which it thought would "fairly and equitably compensate the workers for the defendants'" actions. 514 F.Supp. at 80. These damages were not "punitive." Instead they reflected an intent to impose consequences for the violations which would fully serve the purposes of FLCRA. We find that the district court did not abuse its discretion in awarding these damages.

### III.

The case is remanded to the district court for a hearing on whether disclosure was made in written Spanish of the appellants' interim employment plans and for any other determinations authorized by this opinion.[13] Based on the outcome of the hearing the damage award may, if indicated, be modified.[14] In all other respects, the opinion of the district court is affirmed. Costs of the appeal shall be born by appellants. Circuit Rule 18 shall not apply on remand.

---

**13.** For example, it may be appropriate to reconsider Stokely's status as an FLC with respect to some workers of the plaintiff class.

**14.** Modification of damages may be indicated, for instance, by our finding that the substance of the 1978 and 1979 notices on housing fees was adequate.