Benita ALMENDAREZ, et al.,
Plaintiffs-Appellants,

v.

BARRETT–FISHER COMPANY, et al.,
Defendants-Appellees.

No. 84–1785
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

June 17, 1985.

Texas Rural Legal Aid, William H. Beardall, Hereford, Tex., Texas Rural Legal Aid, Weslaco, Tex., for plaintiffs-appellants.

Smith & Davis, Donald L. Davis, Hereford, Tex., for defendants-appellees.

Before RUBIN, RANDALL, and TATE, Circuit Judges.

TATE, Circuit Judge:

The plaintiffs, a certified class of vegetable packing workers, appeal from the judgment dismissing their action for declaratory and injunctive relief and for damages based on alleged violations of the Farm Labor Contractor Registration Act (hereafter "the Act"), 7 U.S.C. §§ 2041 *et seq.*[1] After a bench trial, the district court entered judgment against the plaintiffs on the ground that neither defendant was a "farm labor contractor" as defined in § 3(b)(2) of the Act, 7 U.S.C. § 2042(b)(2). It did not rule on the defendants' alternative contention that, even if they are farm labor contractors, they may claim an exemption pursuant to §§ 3(b)(2) & (3) of the Act, 7 U.S.C. § 2042(b)(2)–(3).

As explained more fully below, the district court misconstrued the Act in holding that the defendant packing shed operators could not be farm labor contractors. The error resulted from the district court's excluding the plaintiff employees from coverage by the Act through an improper literal application of the Act's definition of the term "migrant workers." *See* 7 U.S.C. § 2042(g). Status as a "farm labor contractor" hinges upon hiring "migrant workers." 7 U.S.C. § 2042(b). The Act read as a whole, the manifest legislative purpose and history of the Act, a 1974 amendment broadening the definition of "agricultural employment," and prior judicial and administrative interpretation of the Act as amended in 1974 convince us that packing shed workers are "migrant workers" and that packing shed operators are therefore "farm labor contractors" governed by the Act unless entitled to a statutory exemption. Accordingly, we reverse.

## I.

The parties do not dispute the district court's findings of fact. Neither do they dispute other relevant facts reflected in the record evidence. The findings of fact and the record evidence show the following.

Farmers grow onions and potatoes in the vicinity of Hereford, Texas. After harvest,

---

**1.** The Act originally was passed in 1963, Pub.L. 88–582, 78 Stat. 920, amended in 1974, Pub.L. 88–582, 78 Stat. 920, and replaced in 1982, Pub.L. 97–470, 96 Stat. 2584, by the Migrant and Seasonal Agricultural Worker Protection Act of 1982, Pub.L. 97–470, 96 Stat. 2584, 29 U.S.C.

§§ 1801 *et seq.* As explained below in the text, the plaintiffs in this case sued when the 1974 amended version of the Act was in effect and upon violations occurring under that version of the Act.

the onions and potatoes must be washed, graded, packed, and shipped to wholesale and retail buyers. For this purpose, many of the farmers use the services of the Barrett-Fisher Company.

The Barrett-Fisher Company operates a so-called packing shed in this Texas area for six to eight weeks during the summer months. After packing, Barrett-Fisher ships the vegetables to buyers, collects the purchase price, holds out its agreed packing fee, and returns the balance of the proceeds to the farmers. Until sale to the buyers, the farmers have title and bear the risk of loss due to price changes or property loss or damage. In 1980, as in all years between 1978 and 1982, Barrett-Fisher registered with the United States Department of Labor as a farm labor contractor.

Barrett-Fisher employs the defendant Ramiro Ramos each annual packing season. Ramos, who lives the remainder of the year in New Mexico, determines the number of workers needed in Barrett-Fisher's packing shed operations, hires them, arranges to have them come to the Hereford area, and thereafter determines the workers' job assignments, wages, and housing. Ramos' compensation is based on the weight of the vegetables packed by the plaintiffs. Ramos registered as a farm labor contractor each year from 1977 through at least 1983.

The plaintiffs are a class of vegetable packing workers who worked in 1980 at the Barrett-Fisher packing shed. Ramos recruited and supervised them. The named plaintiffs came to the Hereford area from South Texas, as did others in the plaintiff class.

In 1980, shortly after the end of the packing season, the named plaintiffs sued the defendants Barrett-Fisher and Ramos. The complaint alleged wage and hour violations of the Fair Labor Standards Act, 29 U.S.C. § 206. The parties reached a monetary settlement of this claim before trial, and it is not a part of this appeal.

The plaintiffs also alleged violations of the Farm Labor Contractor Registration Act. 7 U.S.C. §§ 2041 *et seq*. The alleged

violations of the Act's requirements included (a) failure to maintain required payroll records, (b) failure to provide the plaintiffs the required wage receipts, and (c) failure to disclose to the plaintiffs, as required, certain terms and conditions of employment and terms of furnished housing. The plaintiffs sought relief in the form of a declaration that the defendants violated the Act, an injunction against future violations, and an award to each class member of actual damages or statutory liquidated damages, *see* 7 U.S.C. § 2050a.

II.

After a bench trial, the district court held that the defendants were not farm labor contractors within the intendment of the Act. It observed that a farm labor contractor is statutorily defined as any person

who, for a fee, either for himself or on behalf of another person, recruits, solicits, hires, furnishes, or transports *migrant workers* ... for *agricultural employment.*

7 U.S.C. § 2042(b) (emphasis added). The district court then acknowledged that packing shed operators furnish "agricultural employment," as the Act was amended in 1974 expressly to define that term to include packing shed operators:

The term "agricultural employment" means employment in any service or activity included within the provisions of section 203(f) of Title 29 [Fair Labor Standards Act], or section 3121(g) of Title 26 [Federal Insurance Contributions Act] and the *handling*, planting, drying, *packing, packaging*, processing, freezing, or *grading* prior to its delivery for storage of any agricultural or horticultural commodity in its unmanufactured state.

7 U.S.C. § 2042(d) (emphasis added). The court nevertheless concluded that the plaintiffs, packing shed workers, were not "migrant workers" because the Act defines a migrant worker as

an individual whose primary *employment* is in *agriculture* as defined in

section 203(f) of Title 29, or who performs *agricultural labor,* as defined in section 3121(g) of Title 26, on a seasonal or other temporary basis.

7 U.S.C. § 2042(g) (emphasis added). The parties agree that packing shed employees, *for purposes of the statutes thus referenced by § 2042(g),* are not employed "in agriculture" or performing "agricultural labor." *See Marshall v. Gulf & Western Industries,* 552 F.2d 124 (5th Cir.1977).

At issue, then, is whether, *for purposes of § 2042(g) itself,* packing shed employ*ees* do not have "employment ... in agriculture" and are not performing "agricultural labor," even though packing shed operator-employ*ers* clearly are engaged in "agricultural employment" for purposes of § 2042(d). The district court recognized the incongruity of holding that the employ*er* was by the statute covered as engaged in agricultural employment, but that his employ*ees* were not in agricultural employment and thereby not covered. However, the court felt that this incongruous result was one required by the plain language of the statutory definition of migrant workers.

We conclude, for reasons to be stated, that this literal application of a single subsection of § 2042 was erroneous. It creates an absurd inconsistency within the text of § 2042, which must be read as a whole for the purpose of statutory construction, and it leads to a construction of the Act sharply at odds with its clear purpose and legislative history.

### III.

In construing a statute, the ultimate goal is to discern and enforce Congress' intent. The ordinary meaning of the language in a statute is the best indicator of that intent. "Absent a clearly expressed legislative intention to the contrary, that language must be regarded as conclusive." *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *James v. United States,* 760 F.2d 590, 593 (5th Cir. 1985) (en banc).

Literal application of apparently-clear statutory language may, however, be inappropriate if the literal application would conflict with the directive of other statutory language. *Chemical Manufacturers Association v. Natural Resources Defense Council,* —— U.S. ——, ——, 105 S.Ct. 1102, 1108–10, 84 L.Ed.2d 90 (1985); *Interstate Commerce Commission v. American Trucking Association, Inc.,* —— U.S. ——, ——, 104 S.Ct. 2458, 2463–64, 81 L.Ed.2d 282 (1984); *Boys Markets, Inc. v. Retail Clerk's Union,* 398 U.S. 235, 250, 90 S.Ct. 1583, 1592, 26 L.Ed.2d 199 (1970). Literal application of statutory language is, further, inappropriate if it would lead to untenable distinctions or unreasonable results, or to internal inconsistencies in the statute. *American Tobacco Co. v. Patterson,* 456 U.S. 63, 71, 102 S.Ct. 1534, 1538–39, 71 L.Ed.2d 748 (1982); *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). And literal statutory construction is inappropriate if it would produce a result in conflict with the legislative purpose clearly manifested in an entire statute or statutory scheme or with clear legislative history. *United Steelworkers v. Weber,* 443 U.S. 193, 201, 99 S.Ct. 2721, 2726, 61 L.Ed.2d 480 (1979); *Quarles v. St. Clair,* 711 F.2d 691, 698 (5th Cir.1983).

Concerning the Farm Labor Contractor Registration Act specifically, we have held:

Interpretation of the statute is guided by the rules of statutory construction, the plain meaning of the statute's terms, previous court interpretations, the interpretation of the Secretary of Labor as the administrative agency charged with administration of the statute, and the legislative history of the Act.

. . . . .

The Act should be broadly construed because it is remedial in nature. [Citations omitted.]

*Soliz v. Plunkett,* 615 F.2d 272, 275 (5th Cir.1980).

We begin, first, by looking at the original Act. Congress passed the Act in 1963 to

remedy abuses in the practices of farm labor contractors. 7 U.S.C. § 2041. *See* S.Rep. No. 202, 88 Cong., 2d Sess. (1963), *reprinted in* [1964] U.S.Code Cong. & Adm.News 3690. "Congress intended the Act to apply to the middlemen who make arrangements between farmers and migrant workers." *Soliz v. Plunkett*, 615 F.2d 272, 276 (5th Cir.1980). Thus, Congress at that time defined "farm labor contractor" to mean

> any person, who, for a fee, either for himself or on behalf of another person, recruits, solicits, hires, furnishes, or transports ten or more migrant workers ... at any one time in any calendar year for interstate agricultural employment.

7 U.S.C. § 2042(b). For present purposes, the key definitional terms are "migrant workers" and "agricultural employment." The original Act defined the two terms with complete functional consistency, as to the work activities covered, by reference to the same two other statutes:

> The term "interstate agricultural employment" means employment in any service or activity included within the provisions of section 203(f) of Title 29, or section 3121(g) of Title 26, when such service or activity is performed by an individual worker who has been transported from one State to another or from any place outside of a State to any place within a State.

7 U.S.C. § 2042(d).

> The term "migrant worker" means an individual whose primary employment is in agriculture, as defined in section 203(f) of Title 29, or who performs agricultural labor, as defined in section 3121(g) of Title 26, on a seasonal or other temporary basis.

7 U.S.C. § 2042(g). As we indicated above, this definition did not then literally include packing shed employees because, under 29 U.S.C. § 203(f) and 26 U.S.C. § 3121(g), they are not employed "in agriculture" and therefore do not perform "agricultural labor."

In 1974, Congress amended the Act to broaden its coverage. Pub.L. 93–518, 88 Stat. 1656. Congress changed the definition of agricultural employment, retaining the former references to 29 U.S.C. § 203(f) and 26 U.S.C. § 3121(g) but *adding* coverage for

> the handling, planting, drying, *packing*, packaging, processing, freezing, or grading prior to delivery for storage of any agricultural commodity in its unmanufactured state.

7 U.S.C. § 2042(d) (emphasis added). Congress did not, however, make a corresponding change in the definition of "migrant workers," and that definition remained completely unchanged. 7 U.S.C. § 2042(g). Thus, applied literally, packing shed employment did constitute "agricultural employment" covered by the Act, but packing shed employees were not "migrant workers" (because, under the unchanged statutory definition of § 2042(g), they were neither employed in agriculture under 29 U.S.C. § 203(f) nor performing agricultural labor under 26 U.S.C. § 3121(g)).

The district court concluded that Congress' failure to amend § 2042(g)'s definition of "migrant workers" therefore evidenced an intent to maintain the term's former meaning, *despite* amendment to § 2042(d)'s definition of "agricultural employment." That reasoning, although it may be valid in some situations, *cf.*, *Russello v. United States*, 464 U.S. 16, ——, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983), cannot apply here: for the literal application of the unchanged definition of "migrant worker" in § 2042(g) would render meaningless the important 1974 change in the § 2042(d) that broadened the definition of "agricultural employment" to include packing and processing of agricultural commodities.

The district court's construction of the former definition of "migrant worker" as unchanged would require the conclusion that Congress did nothing by expanding in 1974 the meaning of agricultural employment to include packing shed *operations*, while at the same time deliberately maintaining a definition of migrant workers that excluded packing shed employ*ees*. This would, in logic and practical effect,

require us to conclude that Congress intended to accomplish nothing. *See Interstate Commerce Commission v. American Trucking Association, Inc.,* —— U.S. ——, ——, 104 S.Ct. 2458, 2464, 81 L.Ed.2d 282 (1984).

We cannot ascribe to Congress such an intention to enact meaningless or futile legislation. "[W]hen Congress amends a law the amendment is made to effect some purpose." *Argosy Ltd. v. Hennigan,* 404 F.2d 14, 18 (5th Cir.1968). *See United States v. Crittenden,* 600 F.2d 478, 479–80 (5th Cir.1979) (if there is conflict, later statute prevails). "[A] court should go beyond the literal language of the statute if reliance on that language would defeat the plain purpose of the statute." *Bob Jones University v. United States,* 461 U.S. 574, 586, 103 S.Ct. 2017, 2025, 76 L.Ed.2d 157 (1983).

The amendment of § 2042(d) obviously was done for a purpose, and we are bound to construe the entirety of § 2042 in a way that accomplishes, and does not defeat, that purpose. *See Chamberlain v. Kurtz,* 589 F.2d 827, 838–40 (5th Cir.1979). Statutory language cannot be construed and applied in isolation from other relevant language in the statute or statutory scheme. "Statutory interpretation requires more than concentration upon isolated words; rather, consideration must be given to the total corpus of pertinent law and the policies that inspired ostensibly inconsistent provisions." *Boys Markets, Inc. v. Retail Clerk's Union,* 398 U.S. 235, 250, 90 S.Ct. 1583, 1592, 26 L.Ed.2d 199 (1970). *See Philbrook v. Glodgett,* 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975); *Kokoszka v. Belford,* 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1974).

■ We are convinced, therefore, from a reading of § 2042 as a whole, that Congress intended to include packing shed operators as farm labor contractors in the 1974 amendments to the Act. It manifested its intent by the plain words of § 2042(d)'s amended definition of agricultural employment. By obvious oversight,[2] Congress did not amend § 2042(g). "[I]t is ... unequivocally our mission to take arguably contradictory statutory passages and to reconcile them where the intent of Congress is clear but the implementation somewhat faulty." *Atwell v. Merit Systems Protection Board,* 670 F.2d 272, 286 (D.C.Cir.1981). The references in § 2042(g) to "agricultural labor" and "employment ... in agriculture" should, therefore, be read in light of the amendment to § 2042(d). *See United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981) ("internal inconsistencies in the statute must be dealt with").

---

**2.** The oversight label seems inevitable as a matter of simple common sense. In the original version of the Act in 1963, the concepts of agriculture mentioned in § 2042(d) and in § 2042(g) were completely symmetrical, both relying on definitions in Title 26 and Title 29. The corresponding, symmetrical provisions of § 2042(d) and § 2042(g) are not surprising: there is no imaginable reason to give agricultural employment (for the purpose of the employ*er* under § 2042(d)) a different meaning from the concept of agricultural labor or employment in agriculture (for the purpose of the employ*ee* under § 2042(g)). It seems silly to suggest that an employer offers agricultural employment—but that his employee accepting such employment is not engaged in agricultural labor or employed in agriculture. No basis is suggested to doubt that Congress, in amending § 2042(d) to broaden the Act's coverage in 1974, intended (but overlooked) a corresponding, symmetrical change in § 2042(g).

We are fortified in this conclusion by more recent legislation. Upon repeal of the Farm Labor Contractor Act, Pub.L. 97–470, 96 Stat. 2600, Congress re-enacted its provisions in the Migrant and Seasonal Agricultural Worker Protection Act of 1982, Pub.L. 97–470, 96 Stat. 2584, 29 U.S.C. §§ 1801 *et seq.* The 1982 Act retained the 1974 amended definition of "agricultural employment," 29 U.S.C. § 1802(3), but redefines migrant worker simply as an "individual who is employed in agricultural employment," 29 U.S.C. § 1802(8). Thus, the relevant statute again has been expressly harmonized, as it was originally before the oversight in the 1974 amendment. (The view of a subsequent Congress is an available—albeit hazardous—tool of statutory construction. *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 117–18 & n. 13, 100 S.Ct. 2051, 2061 & n. 13, 64 L.Ed.2d 766 (1980).)

A contrary interpretation of § 2042 would impermissibly conflict with its clear purpose and policy. "Statutes are contextual as well as textual." *Argosy Ltd. v. Hennigan,* 404 F.2d 14, 20 (5th Cir.1968). We must " 'find that interpretation which can most fairly be said to be imbedded in the statute, in the sense of being most harmonious with its scheme and with the general purposes that Congress manifested.' " *Commissioner of Internal Revenue v. Engle,* 464 U.S. 206, ——, 104 S.Ct. 597, 604, 78 L.Ed.2d 420 (1984). *See Bob Jones University v. United States,* 461 U.S. 574, 586, 103 S.Ct. 2017, 2025, 76 L.Ed.2d 157 (1983); *United Steelworkers v. Weber,* 443 U.S. 193, 201–02, 99 S.Ct. 2721, 2726–27, 61 L.Ed.2d 480 (1979); *Scott v. Moore,* 640 F.2d 708, 727 (5th Cir.1981) (construction must give "due regard to the mischief which the legislation was designed to remedy"). The question of statutory purpose is particularly important where, as here, a statute is remedial. *See Soliz v. Plunkett,* 615 F.2d 272, 275 (5th Cir.1980) ("The [present] Act should be broadly construed because it is remedial in nature.").

We perceive the purpose of the amended Act to have been to check, as fully as possible, the abuses of the middlemen between farmers and migrant workers. The very reason for the 1974 amendment was to implement this purpose more fully by expanding the coverage of the Act to include persons such as packing shed operators. S.Rep. No. 93–1295, 93rd Cong., 2d Sess. (1974), *reprinted in* [1974] U.S.Code Cong. & Adm.News 6441, 6448. The defendants identify no functional distinction between their activities vis-a-vis the plaintiffs and those of the middlemen recognized as farm labor contractors before the 1974 amendment. *E.g., Soliz v. Plunkett,* 615 F.2d 272 (5th Cir.1980). Indeed, it seems obvious that the reason for the amendment of § 2042(d) was to include packing shed operators such as Barrett-Fisher within the coverage of the Act. The Act should, therefore, be construed consistently with the remedial extension embodied in the 1974 amendment.

The legislative history of the 1974 amendments to the Act confirms this construction of the Act. In its report, the Senate Committee on Labor Law and Public Welfare indicated that the 1974 amendments were designed "to provide for the extension of [the Act's] coverage." Senate Report No. 93–1295, 93rd Cong., 2d Sess. (1974), *reprinted in* [1974] U.S.Code Cong. & Adm.News 6441. The Committee spoke of "the increased number of persons who would be defined as farm labor contractors under this legislation." *Id.,* [1974] U.S. Code Cong. & Adm.News 6441, 6446. Indeed, in that portion of the report discussing the "coverage" of the amended Act, the Committee specifically noted that the amendment to § 2042(d) provided coverage "to all aspects of commerce in agriculture, including" not only those previously defined but also "other processing of agricultural or horticultural products in an unmanufactured state," and the report also detailed when a "packing shed operator" could be exempt from the requirements of the amended Act,—clearly indicating that packing shed operators ordinarily are farm labor contractors. *Id.,* 1974 U.S.Code Cong. & Adm.News at 6447, 6448; *see* H.Rep. No. 93–1493, 93rd Cong., 2d Sess. (Nov. 25, 1974), pp. 1, 8, to same effect. Clear legislative history, such as this, should not lightly be ignored. *Blum v. Stenson,* —— U.S. ——, ——, 104 S.Ct. 1541, 1546–48, 79 L.Ed.2d 891 (1984); *James v. United States,* 760 F.2d 590, 593, 596–599 (5th Cir.1985) (en banc).

■ In addition, we are obliged to defer to reasonable interpretation of a statute by an agency charged with its administration. *Soliz v. Plunkett,* 615 F.2d 272, 276 (5th Cir.1980) (concerning the present Act). *See Chemical Manufacturers Ass'n v. Natural Resources Defense Council,* —— U.S. ——, ——, 105 S.Ct. 1102, 1108, 84 L.Ed.2d 90 (1985); *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* —— U.S. ——, ——, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984); *Joseph v. New Orleans Electrical Pension & Retirement Plan,* 754 F.2d 628, 630 (5th Cir.1985). By the

terms of the Act, the Department of Labor was charged with its administration.

In an Opinion Letter of the United States Department of Labor Wage-Hour Administrator, the Administrator clearly interpreted the amended Act to include packing shed workers as "migrant workers" and packing shed operators as "farm labor contractors." In this letter, the precise questions posed were "[w]hether the definition of 'migrant worker' as used in Section 3(g) includes employees in the agricultural processing plant" and whether those recruiting such employees were farm labor contractors required to comply with the Act. The Administrator answered:

"Under Section 3(b), a person is a farm labor contractor when he engages in any of the farm labor contracting activities enumerated therein with regard to the use of migrant workers for agricultural employment." Section 3(d) defines "agricultural employment" to mean "employment in any service or activity included within the provisions of Section 3(f) of the Fair Labor Standards Act of 1938 ... or Section 3121(g) of the Internal Revenue Code of 1954...." As a result of the 1974 Amendment to Section 3(d), the term "agricultural employment" has been expanded to encompass the handling, planting, drying, packing, packaging, processing, freezing, or grading prior to delivery for storage of any agricultural or horticultural commodity in its unmanufactured state." Thus, if the farm labor contracting activities enumerated in Section 3(b) involve workers for employment in any of the types of operations included in the amendment to Section 3(d), such workers are "migrant workers" for purposes of the amended Act.

Since the plant of the ... Corporation is engaged in processing unmanufactured citrus fruits, those workers who were recruited for employment in the "handling, planting, drying, packing, packaging, processing, freezing, or grading ..." activities would qualify as "migrant workers" as this term is used in the amended Act. Accordingly, the recruitment of these workers would subject any person who recruited them to the registration requirements of the Act unless specifically exempted.

Wage-Hour Administrator Opinion Letter No. 1491, Lab.L.Rep. (CCH) [1973–78 Wage-Hour Transfer Binder] ¶ 31,142, at 42,813–814.[3]

Finally, we note that the Seventh Circuit has held "cannery workers" to be migrant workers under the amended Act, as being engaged in "agricultural employment" within the definition as provided by the 1974 broadening amendment of § 2042(d). *De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 236 (7th Cir.1983). The 1974 amendment to the definition of agricultural employment in § 2042(d) included not only packing shed operations, but also "packaging" and "processing" produce before it is processed *and* stored. *Id.* In *De La Fuente,* the defendants did not contest the issue we confront—whether the amendment to § 2042(d) impliedly changed the meaning of § 2042(g). Instead, the defendants contended narrowly that work after processing but before storage (e.g., canning) is not covered in the amended definition of agricultural employment. The Seventh Circuit rejected this contention and, while not confronting the precise argument made in this case, clearly stated that canning workers—included in the 1974 amendment to § 2042(d)—are "migrant workers" for the purpose of § 2042(g). "[T]he cannery workers in this case were, like their counterparts in the fields, engaged in 'agricultural employment' covered by the Act." 713 F.2d at 236.[4]

---

**3.** A reasonable agency interpretation of a statute is of particularly great weight if the agency assisted in drafting the statute. *Miller v. Youakim,* 440 U.S. 125, 144, 99 S.Ct. 957, 968–69, 59 L.Ed.2d 194 (1979). Such was the case with the 1974 amendments to the Act. S.Rep. No. 93–

1295, 93rd Cong., 2d Sess. (1974), *reprinted in* [1974] U.S.Code Cong. & Adm.News 6441, 6445.

**4.** The defendants attempt to distinguish *De La Fuente* on two grounds. First, they say that, in *De La Fuente,* the defendant's securing interim

In summary: The express terms and plain purpose of the Act, its prior and subsequent legislative history, the interpretation of the Department of Labor, and a precedent of another circuit demonstrate that packing shed workers are statutory "migrant workers" and that packing shed operators are statutory "farm labor contractors." [5]

*Conclusion*

The defendants contend that they are entitled to a statutory exemption. *See* 7 U.S.C. § 2042(b)(2)–(3). The district court did not reach this contention. Since the matter must be remanded as to other contentions also unreached, we deem it preferable to remand to the district court on this issue also.

For the foregoing reasons, the judgment of the district court is REVERSED. The district court did not determine the defendants' claim of statutory exemption, the existence or not of all alleged violations of the Act, or the appropriate relief. Accordingly, we REMAND to the district court for further proceedings consistent with this opinion.

REVERSED and REMANDED.

employment of their workers with other employers, a feature not present in this case, was determinative. Nothing, however, in the language of the Seventh Circuit's opinion shows that this was even relevant to the cannery workers' "migrant worker" status. Second, the defendants note that the *De La Fuente* defendant engaged in harvesting and packing activities in addition to cannery activities. Again, the *De La Fuente* opinion does not indicate that the other activities of the defendant-employer bore any relation to the "migrant worker" status of the plaintiff-workers.

5. In view of this holding, we do not reach the plaintiffs' contention that the defendants, having registered as farm labor contractors, are estopped to deny such status.