Thomas A. MURRAY, et al., Plaintiffs,

v.

CINGULAR WIRELESS
II, LLC, Defendant.

No. 05 C 1334.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 22, 2005.

Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Thomas Everett Soule, Edelman, Combs, Latturner & Goodwin, LLC, Chicago, IL, for Plaintiffs.

Charles H.R. Peters, Kevin S. Hovis, Lindsey L. Evans, Lisa Ann Brown, Schiff Hardin LLP, Chicago, IL, for Defendant.

### MEMORANDUM AND ORDER

MANNING, District Judge.

Plaintiffs Thomas Murray, Jason Wanek, and Deborah Jackson each received an offer in the mail from defendant Cingular Wireless containing an offer for a cellphone and cellphone service for individuals who "satisfied certain criteria for creditworthiness" based on "information from a consumer-reporting agency." According to the plaintiffs, Cingular chose to send them this offer after improperly accessing their credit report. The plaintiffs thus assert that Cingular violated the Fair Credit Reporting Act ("FCRA") and is liable for statutory damages under 15 U.S.C. § 1681n. The plaintiffs seek to certify a class consisting of "all persons with Illinois addresses to whom defendant sent [the direct mail offers] on or after March 7, 2003, and before May 8, 2005." For the following reasons, the plaintiffs' motion for class certification is granted.

### Standard for a Motion for Class Certification

The plaintiffs must establish that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). In addition, they must also satisfy at least one prong of Fed.R.Civ.P. 23(b), which provides that an action may be maintained as a class action if: (1) the prosecution of separate actions would create a risk of inconsistent adjudications or would impair the ability of non-parties to protect their interests; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class; or (3) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

### Discussion

Cingular raises a host of challenges to certification. As the court noted in its recent order granting Cingular's motion for judgment on the pleadings as to the plaintiffs' § 1681m(d) "clear and conspicuous" claim, plaintiff Thomas Murray and his family have filed a flurry of FCRA cases. Thus, two of the court's colleagues very recently ruled on class certification motions that are remarkably similar to the one filed in this case. See *Murray v. GMAC Mortgage Corp.*, No. 05 C 1229, 2005 WL 3019412 (N.D.Ill. Nov.8, 2005) (Der–Yeghiayan, J.) (denying motion for class certification); *Murray v. New Cingular Wireless Services, Inc.*, 232 F.R.D. 295 (N.D.Ill.2005) (Castillo, J.) (granting motion for class certification). In light of the differing results, the parties each vigorously champion the rationale of the order that went their way. Unfortunately for Cingular, for the following reasons, the court respectfully parts company with Judge Der–Yeghiayan and finds that class certification is appropriate.

### Rule 23(a)(1)—Numerosity

Rule 23(a) requires that a proposed class be so numerous that joinder is impractical. The proposed class consists of approximately 835,939 members, so Cingular correctly does not challenge numerosity.

### Rule 23(a)(2)—Commonality

The plaintiffs must also show that questions of fact or law are common to the class. Fed.R.Civ.P. 23(a)(2). Claims based on a form letter "present a classic case for treatment as a class action." *Murray v. New Cingular Wireless Services, Inc.*, 232 F.R.D.

at 298–99 (internal quotations omitted). Cingular asserts that while all of the putative class members received the same letter, only some members potentially suffered actual damages based on the letter. It thus contends that the claims of the named plaintiffs (who seek only statutory damages) are dissimilar to the claims of other class members who incurred actual damages and, in turn, that each claim for actual damages is unique.

The court disagrees. From a liability perspective, the legal question at issue for each plaintiff is identical: did Cingular violate the FCRA when it accessed the credit reports of the individuals who received the cell phone offer letter? If this issue is resolved against Cingular and individual damages issues indeed turn out to predominate (an eventuality which appears unlikely at this point, but may seem more probable as the record becomes more developed), the court is confident that Cingular will bring this matter to the court's attention. Accordingly, the court finds that the proposed class meets Rule 23(a)(2)'s commonality requirement.

### Rule 23(a)(3)—Typicality

■ Rule 23(a)(3) requires that the claims of the class representative be typical of the claims of the entire class. The court adopts Judge Castillo's conclusions at to typicality, made in a case brought by Mr. Murray against AT & T based on a virtually identical letter:

> A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983). Murray's claim arises from the same course of conduct as the claims of other class members—AT & T's inappropriate prescreening of his consumer credit. His claim is also based on the same legal theory as the claims of the other class members—that AT & T's practice of prescreening the credit of recipients of its promotion violates [the] FCRA because the promotion does not contain clear and conspicuous disclosures as required of firm offers of credit nor does it comport with any of the other

permissible bases for screening consumer credit under FCRA. Thus, we find that Murray has satisfied the typicality requirement of Rule 23(a)(3).

*Murray v. New Cingular Wireless Services, Inc.*, 232 F.R.D. at 298–99.

### Rule 23(a)(4)—Adequacy

■ A proposed class representative meets the adequacy requirement of Rule 23(a)(4) if: (1) he does not have antagonistic or conflicting claims with other members of the class; (2) he has a sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) his counsel is competent, qualified, experienced and able to vigorously conduct the litigation. *Id.* at 299–300. Cingular contends that the named plaintiffs in this case are professional litigants who only care about making a fast buck and thus are not dedicated to vindicating the rights of the class members. Cingular also asserts that Edelman & Combs is solely motivated by its desire to obtain class action fees.

■ It is true that the named plaintiffs' deposition testimony shows that they are neither FCRA experts nor skilled litigators. Nevertheless, a named plaintiff's lack of knowledge and understanding of the case is insufficient to deny class certification unless his ignorance unduly impacts his ability to vigorously prosecute the action. *Id.* "An understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery are sufficient to meet this standard." *Id.* (internal citations and quotations omitted). Mr. Murray and his fellow plaintiffs have satisfied this undemanding standard, as the record shows that they understand the basic facts of their case, are participating in discovery, and are otherwise allowing the case to proceed.

This conclusion is not affected by the fact that the named plaintiffs appear to greet the arrival of what most people would consider junk mail (*i.e.*, unsolicited offers of credit) with joy and eagerly show their mail to lawyers at Edelman & Combs pursuant to a pre-existing agreement in the hope of finding an offer that presents a colorable FCRA claim.

The court notes that the named plaintiffs are unquestionably professional plaintiffs. Nevertheless, while not condoning such arrangements, the court acknowledges that in this instance, any agreement between the plaintiffs and Edelman & Combs appears to promote the interests of all of the recipients of the letters, as it is doubtful that the average recipient has the ability to assess whether an entity who sent an unsolicited offer of credit has, in fact, potentially violated the FCRA.

In addition, it is inconsistent for Cingular to claim on the one hand that the plaintiffs are too unsophisticated to act as class representatives, and on the other hand, fault them for seeking legal counsel when they receive unsolicited offers of credit. Moreover, if there is a colorable basis to believe that a letter violates the FCRA, then a recipient of that letter is entitled to file suit, even if he/she has filed other suits based on other letters. In short, the court understands Cingular's desire to limit the named plaintiffs' ability to file additional FCRA lawsuits, but declines to adopt a rule limiting a plaintiff to a finite amount of lawsuits regardless of how many potentially improper offers of credit that plaintiff receives.

This brings the court to Edelman & Combs' suitability to act as class counsel. Cingular claims that Edelman & Combs has failed to adequately represent the interests of the class because it told the named plaintiffs to be on the lookout for unsolicited offers of credit but did not advise them that they could opt out and not receive any of these offers in the future. According to Cingular, Edelman & Combs thereby placed their clients in harm's way by allowing them to receive additional offers of credit that violated the FCRA.

The logical extension of this argument is that a consumer is limited to a single FCRA "unsolicited offer of credit" case as any attorney offering legal advice regarding an offer of credit is obligated to advise that client about the "opt out" rule and thereby prevent that client from receiving future offers of credit. The court is unaware of any such rule. Moreover, there might be some consumers out there, unlikely though it may seem, who actually want to receive unsolicited offers of credit. Perhaps they might receive a better deal this way than by going out and affirmatively applying for credit.

The court also notes that consumers are entitled to receive unsolicited offers of credit and are entitled to take legal action if their lawyers believe that there is an actionable FCRA claim. There is no rule that requires them to engage in "self-help" measures in an effort to avoid receiving non-compliant offers of credit. In short, Cingular has failed to convince the court that Edelman & Combs has offered sub-par advice or engaged in unethical behavior in this case. It thus concludes that the named plaintiffs and Edelman & Combs are adequate within the meaning of Rule 23(a)(4).

### Rule 23(b)(3)—Predominance & Superiority

Under Rule 23(b)(3), a plaintiff must also must show that (1) common questions of fact or law predominate over questions affecting individual class members and (2) that a class action is superior to other methods of adjudication. With respect to predominance, Cingular contends that the Seventh Circuit has held that a plaintiff must suffer an actual pecuniary loss in order to receive statutory damages under the FCRA. According to Cingular, because the plaintiffs here have conceded that they did not suffer any actual damages, they—and all other putative class members who did not suffer any actual damages—cannot receive any statutory damages under the FCRA. In support of this argument, Cingular directs the court's attention to *Ruffin–Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603 (7th Cir. 2005).

*Ruffin–Thompkins*, however, does not stand for the broad proposition suggested by Cingular. In that case, a consumer contended that the defendant credit reporting agency violated 15 U.S.C. § 1681i by failing to reinvestigate her claim that her credit report was inaccurate. The Seventh Circuit held that in a suit based on § 1681i, a consumer must show that she notified the agency of the alleged error and that the agency's failure to reinvestigate caused actual harm, such as the loss of credit. 422 F.3d at 608. It thus

affirmed the grant of summary judgment to the defendant, explaining that the plaintiff had failed to show that she had suffered any pecuniary damages or that she was denied credit due to the inaccuracy of her credit report. *Id.* at 609. It also held that, because the plaintiff had failed to show that the defendant had violated § 1681i, she could not show that the defendant had willfully violated the FCRA (given that there was no violation of the FCRA in the first place) and thus could not receive any statutory or punitive damages. *Id.* at 610.

■ Here, the plaintiffs are contending that Cingular is liable under § 1681n, which provides that "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer" is liable for, among other things, "any actual damages sustained by the consumer as a result of the failure *or* damages of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(a)(1)(A) (emphasis added). If the plaintiffs' claim that Cingular willfully violated certain sections of the FCRA ends up carrying the day, they thus may recover statutory damages even if they have not suffered any actual damages. *See id.* This conclusion is entirely consistent with *Ruffin–Thompkins,* as in that case, the plaintiff's claim for statutory damages failed because the plaintiff failed to show that the defendant had willfully violated the FCRA (which is a prerequisite to statutory damages under § 1682n).

Cingular also asserts that individual issues predominate because the question of whether its offer contained a firm offer of credit under the FCRA raises individualized issues because the value of the offer varies among class members. The court finds that "common issues of fact and law stemming from highly generalized proof (the solicitation) predominate over any individualized assessment that may be needed." *Murray v. New Cingular Wireless Services, Inc.,* 232 F.R.D. at 302–03. It also finds that "[t]he focal point of these proceedings will be [Cingular's] alleged course of conduct in depriving putative class members of their rights under the FCRA. This issue certainly predominates over any individual damages issues that

might exist." *Id.* The court thus concludes that common questions of law and fact predominate over any individual issues.

### *Rule 23(b)(3)—Superiority*

■ It is well-established that class actions are superior to individual actions where potential damages may be too insignificant to provide class members with an incentive to pursue a claim individually. *See id.* Cingular nevertheless contends that a class action in this case is not superior because the potential statutory award under the FCRA is grossly disproportionate to any harm that may have been caused by its mass-mailing. "Courts have refused to certify classes where the application of statutory damages is grossly disproportionate to the harm caused because of due process concerns." *Id.* The FCRA allows victorious plaintiffs to recover between $100 and $1,000 in statutory damages. 15 U.S.C. § 1681n(a)(1)(A).

Given the size of the proposed class, this adds up to a significant amount of money if the plaintiffs prevail. The fact remains, however, that Cingular created this exposure when it sent out a mass mailing to approximately 835,939 people. Moreover, the court could revisit its class certification decision or "reduce damages in the event of any successful judgment against Cingular if necessary to comport with due process" as "[r]educing an unnecessarily large statutory damage award is a more palatable option than allowing defendants to commit substantive violations of the law and escape liability essentially because they have violated the rights of too many individuals, all of whom want to sue as is their right." *Murray v. New Cingular Wireless Services, Inc.,* 232 F.R.D. at 302–03.

Cingular also points to Judge Der–Yeghiayan's finding that a class action is not superior to individual actions because "[i]f the court were to certify a class and the proposed class settlement occurs, [the defendant] will lose a significant amount of money, each individual class member will get a pittance, and Murray's counsel will receive a handsome sum." *Murray v. GMAC Mortgage Corp.,* 2005 WL 3019412 at *3. Unfortunately, however, that is the way that class actions often proceed. The court will assume for the purposes of this discussion that class

members will only be able to seek statutory damages, and if the evidence eventually shows that individual actual damages claims predominate, the court may revisit its decision to certify a class. If the class members had to file individual suits seeking $100–$1,000 each and had to pay attorneys' fees for each case, they would likely not bother, and it they did, they would still receive a pittance if they received any money at all. Congress has elected to allow class actions to create an incentive for lawyers to take cases where the recovery of individual class members creates a disincentive to file suit. This court lacks the power or desire to tamper with this mechanism.

The court also disagrees with Cingular's claim that statutory damages are a liquidated damages substitute for compensatory damages, and that certifying a class would transform these compensatory damages into an unconstitutional punitive damages award that bears no relationship to the actual harm suffered by the plaintiffs. This argument is speculative at this point in the proceedings. Moreover, while it is true that a grossly excessive statutory damages award creates a due process problem, "the sum of actual damages suffered by a class of plaintiffs will be the same regardless of whether their claims are prosecuted as a single class action or as a myriad of individual suits." *In re Napster*, No, C MDL–00–1369, 2005 WL 1287611 at *11 (N.D.Cal. Jun.1, 2005). Thus, the damages accrued by Cingular are the same regardless of whether the court certifies a class or not.

In addition, as noted above, Cingular created the potential for a large damages award by sending out a slew of unsolicited offers of credit, and cannot use the large number of potentially injured individuals to shield itself from class certification. Finally, if and when a due process problem arises, the court will address it. To hold otherwise and to deny class certification on the basis of a potential large award would eviscerate Rule 23, which was meant to benefit plaintiffs with small claims who would be otherwise unable to vindicate their rights. *See id.* The court thus finds that a class action satisfies Rule 23(b)(3)'s superiority requirement.

*Conclusion*

For the foregoing reasons, the plaintiffs' motion for class certification [56–1] is granted.